**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STEVEN W. CROWE,
    *Plaintiff-Appellant,*

 v.

CHRISTINE WORMUTH, Secretary
of the Army,
    *Defendant-Appellee,*

RYAN D. MCCARTHY,
    *Defendant-Appellee,*

 and

MARK T. ESPER, Secretary of the
Army, sued in his official capacity,
    *Defendant.*

No.21-15802

D.C. No.
1:18-cv-00288-
ACK-RT

OPINION

Appeal from the United States District Court
for the District of Hawaii
Alan C. Kay, District Judge, Presiding

Argued and Submitted October 14, 2022
Submission Withdrawn January 5, 2023
Re-argued and Re-submitted March 2, 2023
San Francisco, California

Filed July 25, 2023

Before:  Mary M. Schroeder, Johnnie B. Rawlinson, and
Daniel A. Bress, Circuit Judges.

Opinion by Judge Bress;
Concurrence by Judge Schroeder

**SUMMARY**[*]

**Employment/Merit Systems Protection Board**

The panel affirmed in part and vacated in part the district court's decision and remanded in an action brought by Steven Crowe, a police officer at the Tripler Army Medical Center in Honolulu, Hawaii, alleging that he had been subjected to discrimination based on his sexual orientation (bisexual) and race (Caucasian), retaliated against for protected conduct, and ultimately terminated from his employment.

Prior to his termination, Crowe filed a complaint with the Equal Employment Opportunity (EEO) office alleging sexual and race discrimination, retaliation, and a proposed and later a formal termination. After he was terminated, Crowe attempted to file a mixed case appeal with the Merit Systems Protection Board (MSPB), seeking to appeal the Army's termination decision based on the affirmative

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

defense of sexual orientation discrimination. The MSPB upheld Crowe's termination and Crowe filed suit in district court.

The panel first vacated the district court's decision that Crowe failed to exhaust administrative remedies before the MSPB with respect to his claims of pre-termination adverse employment actions. The panel held that the MSPB lacked jurisdiction to consider the pre-termination claims. Neither the text nor the structure of the Civil Service Reform Act (CSRA) supports the theory that the MSPB has pendent jurisdiction to decide factually related claims of discrimination associated with personnel actions outside the list of "particularly serious" actions set forth in 5 U.S.C. 7512. Such discrimination claims must instead be exhausted through the EEO process. The panel remanded for further proceedings.

The panel affirmed the district court's (1) determination that Crowe failed to exhaust before the MSPB any other theories of discrimination for his termination besides sexual orientation, the only claim Crowe asserted; (2) grant of summary judgment to the Army on Crowe's Title VII claim, finding there was no genuine dispute of material fact that Crowe was terminated because of his misconduct at the workplace, as opposed to his sexual orientation; and (3) grant of summary judgment to the Army on Crowe's CSRA claim, finding that substantial evidence supported the MSPB's finding that Crowe regularly had sex at TAMC during work hours.

Concurring, Judge Schroeder agreed with the majority's outcomes, including its conclusion to remand the pre-termination claims to the district court, but noted the unfortunate situation that two government entities are taking

opposing positions with respect to the district court's
jurisdiction to hear the pre-termination claims.

## COUNSEL

Kevin Owen (argued), Gilbert Employment Law, Silver
Spring, Maryland; Elbridge W. Smith and Elbridge Z. Smith,
Smith Himmelmann AALC ALC, Honolulu, Hawaii; Mateo
Caballero, Caballero Law LLLC, Honolulu, Hawaii; for
Plaintiff-Appellant.

Stephen W. Fung (argued), Attorney; Katherine M. Smith,
Deputy General Counsel; Allison J. Boyle, General Counsel;
Office of the General Counsel, United States Merit Systems
Protections Board; Washington, D.C.; for Amicus Curiae
Merit Systems Protection Board.

Edric Ming-Kai Ching (argued), Assistant U.S. Attorney;
Clare E. Connors, United States Attorney; Office of the
United States Attorney, District of Hawaii; Honolulu,
Hawaii; for Defendants-Appellees.

## OPINION

BRESS, Circuit Judge:

"[T]he intersection of federal civil rights statutes and civil service law has produced a complicated, at times confusing, process for resolving claims of discrimination in the federal workplace." *Kloeckner v. Solis*, 568 U.S. 41, 49 (2012). In this case, we work in one wing of this difficult area and consider whether the plaintiff failed to exhaust certain claims before the Merit Systems Protection Board (MSPB). This in turn requires us to examine the scope of the MSPB's jurisdiction in a so-called "mixed case," in which a federal employee alleges that a qualifying adverse employment action (here, termination) was motivated in whole or in part by unlawful discrimination. Our principal holding is that the plaintiff did not fail to exhaust before the MSPB his discrimination claims based on pre-termination adverse employment actions because the MSPB lacked jurisdiction to consider those claims.

We affirm in part, vacate in part, and remand for further proceedings.

I

A

Plaintiff Stephen Crowe worked as a police officer at the Tripler Army Medical Center (TAMC) in Honolulu, Hawaii. Supervisory Police Officer Michael Ballesteros was Crowe's superior. In February 2016, Crowe complained to Ballesteros that another officer, Kevin Oda, had called Crowe a "fag" or "faggot" when introducing him. Crowe alleges that Oda used this term on other occasions, both in

specific reference to Crowe and as a word that he would use generally.

Ballesteros oversaw an inquiry into this issue. In that process, Officer Oda admitted using the derogatory term and participated in counseling with Ballesteros. Shortly thereafter, Officer Oda apologized to Crowe in a meeting with Ballesteros. In a formal Memorandum of Counseling to Officer Oda, Ballesteros wrote that "this type of language use and behavior is degrading to many individuals and unacceptable." Officer Ballesteros maintained that, at the time of Crowe's complaint and the meeting, he did not know Crowe's sexual orientation.

A few months later, Officer Ballesteros received a complaint from James Sewell, an employee in the TAMC Emergency Department. Sewell alleged that Crowe had aggressively confronted Sewell about a supposed relationship between Sewell and a Ms. Garcia, who worked as a medical assistant at TAMC and had previously dated Crowe. Sewell, whose significant other was TAMC employee Kiana Ah Lee Sam, took offense at Crowe "spreading lies" about an alleged affair between Sewell and Garcia. Sewell also noted that Crowe, as a law enforcement officer, was carrying a gun when he confronted Sewell, implying this made Sewell feel unsafe.

Officer Ballesteros brought Sewell's complaint to his superiors, who asked him to initiate an investigation. Officer Ballesteros assigned the investigation to Officer Oda, the first officer he saw. Ballesteros also chose Oda for the job because as the "operations officer," Oda was "capable of doing investigations." On Officer Ballesteros's instruction, Officer Oda interviewed four individuals—Garcia, Vasthi

Tabangeura, Sam, and Sewell—and obtained sworn statements from each.

Garcia admitted that for six months, she and Crowe had sex three to four times per week during work hours in an upstairs room at TAMC, during which time Crowe would take off his duty belt that held his service weapon. Garcia provided corroborating details about these intimate encounters, including information about the room and how other officers would cover for Crowe while he was with Garcia. Garcia later recanted her testimony. After the Army proposed removing Garcia for lying, Garcia withdrew her recantation and stood by her original statement, acknowledging that her workplace sexual relationship with Crowe was "inexcusable."

Tabangeura and Sam, who both worked as medical administration specialists at TAMC, reported that Crowe would spend hours of his shift gossiping with employees and discussing his sex life with them. Tabangeura described how Crowe showed her websites "where he goes to hookup with girls," as well as photos of the women "he's hooking up with." Tabangeura further reported that Garcia had disclosed to her that Garcia was having sex with Crowe in the upstairs room, and that Crowe had himself told Tabangeura about taking a "friend" to have sex in a locked room on TAMC's tenth floor. Tabangeura understood the "friend" to be Garcia. Finally, Sewell described the incident in which Crowe confronted him while on duty.

In May 2016, Crowe was placed on temporary detail without his police powers and was restricted to administrative duties. A month later, Crowe's temporary detail was extended indefinitely pending the investigation. During the investigation, Crowe and his union representative

met with Officer Ballesteros twice. In November 2016, Ballesteros began the process of terminating Crowe by issuing a notice of proposed removal. As relevant here, the notice cited Crowe's confronting Sewell, his on-duty sexual activity with Garcia, and his inappropriate workplace gossiping.

In February 2017, after considering the various witness statements, along with Crowe's response—and after consulting with a subject-matter expert from the Civilian Personnel Office—Officer Ballesteros's superior, Deputy Provost Marshal James Ingebredtsen, independently decided to terminate Crowe from federal service.

## B

Thus began a somewhat excruciating administrative review process. Because the primary issue in this appeal is whether Crowe properly exhausted his claims, we recount this part of the procedural history in some detail.

## 1

In August 2016—after Crowe's placement on indefinite temporary detail but before Officer Ballesteros proposed removing Crowe—Crowe filed a complaint with the Army's Equal Employment Opportunity (EEO) office. Crowe alleged that he had been subjected to discrimination based on his sexual orientation (bisexual) and race (Caucasian). He alleged that discriminatory animus motivated the Army's decisions to investigate him and place him on administrative detail.

On November 5, 2016, the day after Officer Ballesteros proposed that Crowe should be fired, Crowe amended his EEO complaint to assert a claim based on his proposed termination. Crowe also asserted an additional basis for

discrimination in the form of retaliation for his protected activity, claiming that the Army was investigating and seeking to terminate him in retaliation for complaining about Officer Oda's offensive comments. On February 23, 2017, after Crowe was formally terminated from federal employment, he amended his EEO complaint again, this time to encompass his formal (as opposed to merely proposed) termination.

In March 2017—after Crowe's termination but before any action was taken on his EEO complaint—Crowe attempted to file a mixed case appeal with the MSPB, seeking to appeal the Army's termination decision. As we noted above and describe at greater length below, a mixed case is a claim by a federal employee challenging a qualifying adverse employment action and alleging related discrimination. Before the MSPB, and as relevant here, Crowe opposed his termination based on the affirmative defense of sexual orientation discrimination.

Initially, the MSPB Administrative Judge (AJ) dismissed Crowe's mixed case appeal without prejudice because Crowe's pending EEO complaint already encompassed his termination, making it a "mixed case complaint." Although there are many disputed procedural issues in this case, it is undisputed that Crowe could not challenge his termination through a simultaneous EEO mixed case complaint and MSPB mixed case appeal. *See* 29 C.F.R. § 1614.302(b) ("An aggrieved person may initially file a mixed case complaint with an agency pursuant to this part or an appeal on the same matter with the MSPB pursuant to 5 CFR 1201.151, but not both."). To cure this deficiency, Crowe requested that the part of his EEO complaint relating to his termination be voluntarily dismissed. The EEO office granted the motion.

Crowe then re-filed his mixed case appeal with the MSPB, limited to the issue of his allegedly wrongful termination. Before the MSPB, Crowe challenged the sufficiency of the evidence supporting his termination and alleged that his termination was based on sexual-orientation discrimination.[1] Through this maneuver, Crowe split his claims into separate proceedings before the MSPB and Army EEO office. Before the MSPB, Crowe argued that there was insufficient evidence to support his termination, which he also claimed was motivated by sexual-orientation discrimination. Before the Army's EEO office, Crowe challenged the pre-termination adverse employment actions—the investigation of Crowe, the removal of his police powers, his reassignment to administrative duties (including the deprivation of overtime), and his proposed removal—and claimed that those actions were themselves motivated by multiple forms of unlawful discrimination, alleging more bases for discrimination than he did before the MSPB.

After a three-day hearing at which various witnesses testified, the MSBP AJ upheld Crowe's termination. The AJ found that the Army had proven the grounds supporting Crowe's removal, that removal was a reasonable penalty, and that Crowe had failed to establish the affirmative

---

[1] In his re-filed MSPB appeal, Crowe also contended that the Army had discriminated against him on the basis of his sex and race, and in retaliation for complaining about Officer Oda's offensive language. But in subsequent status conferences before the MSPB AJ, Crowe narrowed his claims to assert only sexual orientation discrimination and a now-abandoned assertion of procedural error, in addition to his general challenge to the sufficiency of the evidence supporting the Army's decision to remove him from service.

defense of sexual orientation discrimination. The EEO office, meanwhile, did not rule on Crowe's claims, which meant that after 180 days, Crowe could pursue relief in federal court. 29 C.F.R. § 1614.407(b).

2

On July 27, 2018, Crowe filed this lawsuit in federal district court. *See* 5 U.S.C. § 7703(b)(2); 28 U.S.C. §1331. Crowe's complaint raised both Title VII discrimination claims, *see* 42 U.S.C. § 2000e, *et seq.*, and a challenge under the Civil Service Reform Act (CSRA) to the sufficiency of the evidence supporting the MSPB's decision sustaining his termination, *see* 5 U.S.C. § 7513. But rather than sticking with just the sexual orientation discrimination claim that he had raised before the MSPB, Crowe's Title VII claims alleged discrimination based on his sex, race, and in retaliation for engaging in protected activities (i.e., his complaint against Officer Oda). These latter allegations of discrimination related to the adverse actions taken *before* Crowe's termination. As we have discussed, Crowe had previously raised these pre-termination discrimination claims in his EEO complaints, but not before the MSPB.

The district court dismissed Crowe's sex discrimination, race discrimination, and retaliation claims for failure to exhaust administrative remedies before the MSPB. The court concluded that the MSPB would have had jurisdiction over Crowe's claims of pre-termination discrimination because they were factually related to the claims concerning his formal termination. Because Crowe had not pursued these pre-termination discrimination claims before the MSPB, the district court held that Crowe had failed to exhaust his administrative remedies for those claims.

On Crowe's Title VII claim of wrongful termination based on sexual orientation discrimination—the one claim of discrimination that Crowe had raised before the MSPB—the district court reached the merits and granted summary judgment to the Army.  The court concluded that Crowe had not made out a prima facie case of sexual orientation discrimination; the Army had legitimate non-discriminatory reasons for terminating Crowe; and Crowe had not shown pretext.  Finally, the district court concluded that, under the CSRA, substantial evidence supported the MSPB's decision sustaining Crowe's removal.

Crowe timely appealed.  We have jurisdiction under 28 U.S.C. § 1291.  After we heard oral argument in this case, the MSPB, which has independent litigating authority, *see* 5 U.S.C. § 1204(i), sua sponte filed an amicus brief disagreeing with the district court's (and Army's) exhaustion analysis.   This meant that the Department of Justice (representing the Army) and the MSPB were now taking different positions on the exhaustion question and the scope of the MSPB's jurisdiction.

As a result of this development, we heard oral argument a second time, at which the MSPB appeared as an amicus in support of Crowe on the exhaustion issue.  The district court, which conscientiously evaluated the many complex procedural issues in this case, did not have the benefit of the MSPB's views or the more comprehensive briefing and argument we have now received on the exhaustion questions.

## II

The first and central issue we resolve is whether Crowe properly exhausted his pre-termination discrimination claims by pursuing them before the Army's EEO office

when he was at the same time appealing his termination to the MSPB. The Army argues, and the district court agreed, that Crowe failed to exhaust his pre-termination claims because they were factually intertwined with the discrimination claim he raised before the MSPB, such that Crowe should have challenged all of the Army's adverse employment actions before that body. Crowe and the MSPB maintain that this is incorrect because the MSPB did not have jurisdiction over Crowe's claims of pre-termination discrimination.

We review the purely legal question of exhaustion de novo. *Farrell v. Principi*, 366 F.3d 1066, 1067 (9th Cir. 2004). We hold that Crowe did not fail to exhaust before the MSPB his claims of pre-termination discrimination. The MSPB lacked jurisdiction over those claims, and so Crowe acted properly in raising them in the EEO process at the administrative level.

Given the highly complicated nature of the administrative regime, our analysis must proceed in several steps. In Part A, we lay out the basic mixed case scheme. In Part B, we explain why Crowe's position is correct as a matter of statutory interpretation. In Part C, we address circuit precedent and in Part D, agency precedent and guidance. In Part E, we touch on the policy implications of both our reading of the statute and the Army's contrary position. In Part F, we apply our holding to the facts of Crowe's case. And once we are done with that, we turn to the remaining issues in this case.

A

We begin by setting forth the regime that governs workplace protections for federal employees, as it relates to so-called "mixed cases." This is vast and rugged terrain, and

we describe the governing framework only so far as is necessary to comprehend the role of the MSPB and the exhaustion issues that this case presents.

The Civil Service Reform Act of 1978 (CSRA) "established a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)). For certain "particularly serious" adverse employment actions, the affected federal employee may appeal his agency's employment decision to the MSPB, "an independent adjudicator of federal employment disputes." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012); 5 U.S.C. §§ 7512, 7701. Thus, "[i]f (but only if) the action is particularly serious—involving, for example, a removal from employment or a reduction in grade or pay—the affected employee has a right to appeal the agency's decision to the MSPB." *Kloeckner*, 568 U.S. at 44. We will have more to say below about the specific types of adverse employment actions that are appealable to the MSPB. But the key point for present purposes is that not every type of employment action can be appealed to that authority.[2]

If a federal employee does suffer a qualifying personnel action appealable to the MSPB, he may raise before that adjudicatory body a civil service claim under the CSRA.

---

[2] In addition to the MSPB's appellate jurisdiction over certain adverse employment actions, the MSPB has jurisdiction over other matters not relevant here. *See* 5 C.F.R. § 1201.3. Crowe's appeal does not concern these matters, nor does it implicate the special provisions applicable to claims of whistleblower reprisal. *See* 5 U.S.C. § 1221(a). Our decision is limited to the MSPB's jurisdiction over mixed cases challenging the "particularly serious" adverse employment actions listed in 5 U.S.C. § 7512.

*Perry v. MSPB*, 582 U.S. 420, 424 (2017).  That type of claim essentially maintains that the agency lacked a sufficient basis for taking the adverse action.  *See Kloeckner*, 568 U.S. at 44.  Crowe raised such a CSRA claim here, and we discuss it further below in Part V.  If a federal employee's appeal before the MSPB is limited to such a civil-service-only claim, the MSPB's decision can be appealed, but only to the Federal Circuit.  *See* 5 U.S.C. § 7703(b)(1); *Perry*, 582 U.S. at 422 ("If an employee asserts rights under the CSRA only, MSPB decisions, all agree, are subject to judicial review exclusively in the Federal Circuit.").

Federal employees also receive protections under federal civil rights laws, such as Title VII of the Civil Rights Act of 1964.  In the absence of an accompanying CSRA claim, a federal employee who wishes to pursue a claim of wrongful discrimination under the civil rights laws must follow the usual exhaustion rules that apply to such claims.  *See* 29 C.F.R. §§ 1614.105, 1614.106; *Sloan v. West*, 140 F.3d 1255, 1259 (9th Cir. 1998), *abrogated on other grounds by Perry*, 582 U.S. at 434 & n.8.  That requires filing a complaint with the EEO office of the employee's agency, with the option to appeal to the EEOC and then a follow-on lawsuit in federal district court.  29 C.F.R. §§ 1614.401(a), 1614.110, 1614.407; *Perry*, 582 U.S. at 422; *Sloan*, 140 F.3d at 1259.

When a federal employee suffers a qualifying adverse employment action that is appealable to the MSPB *and* attributes the agency's decision, in whole or part, to unlawful discrimination, the employee has what is known as a "mixed case."  *Perry*, 582 U.S. at 422; *Washington v. Garrett*, 10 F.3d 1421, 1428 (9th Cir. 1993); 29 C.F.R. § 1614.302.  Implementing regulations define a "mixed case complaint" as "a complaint of employment discrimination filed with a

federal agency based on race, color, religion, sex, national origin, age, disability, or genetic information related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB)." 29 C.F.R. § 1614.302(a)(1). Similarly, a "mixed case appeal" is "an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, disability, age, or genetic information." 29 C.F.R. § 1614.302(a)(2).

A federal employee with a "mixed case" has a unique set of procedural options. *See Kloeckner*, 568 U.S. at 44–45 (explaining that "[t]he CSRA and regulations of the MSPB and [EEOC] set out special procedures to govern such a case—different from those used when the employee either challenges a serious personnel action under the CSRA alone or attacks a less serious action as discriminatory"). One option is for the employee to file a discrimination complaint with his agency's EEO office, "much as an employee challenging a personnel practice not appealable to the MSPB could do." *Id.* at 45. If that decision is unfavorable to the employee, or if the EEO office does not rule within a certain period of time, the employee may then appeal his mixed case to the MSPB (making it a mixed case appeal), or he may skip the MSPB and file directly in federal district court. 29 C.F.R. § 1614.302(d)(1); *Perry*, 582 U.S. at 424; *Sloan*, 140 F.3d at 1259.

If the employee does not wish to start the process by filing an internal EEO complaint with his agency, he may instead begin his mixed case by appealing the adverse action straight to the MSPB as a "mixed case appeal" (i.e., appealing the agency's underlying decision to take a qualifying adverse action against the employee). 5 C.F.R.

§ 1201.154(a); 29 C.F.R. § 1614.302(b); *Kloeckner*, 568 U.S. at 45. Once the mixed case reaches the MSPB—either as an appeal from the agency's final decision in the EEO process or as a direct appeal from the adverse employment action that is filed initially with the MSPB—the MSPB may provide a final decision on both parts of the employee's mixed case. 5 U.S.C. § 7702(a)(1). Any party has the option to petition for review before the full Board. 5 C.F.R. § 1201.114. After the MSPB issues a final decision, or after a specified amount of time has passed without a decision, the employee may choose either to seek further administrative review of his discrimination claim before the EEOC, 5 U.S.C. § 7702(b), or to bring his case in the appropriate federal district court (not the Federal Circuit). 5 U.S.C. §§ 7702(e), 7703(a)(1), (b)(2); 29 C.F.R. § 1614.310; *Perry*, 582 U.S. at 425; *Kloeckner*, 568 U.S. at 45.[3]

Importantly, when an employee has a mixed case, he must initiate the administrative process in either his agency's EEO office or the MSPB—but he cannot litigate the mixed case in both. 29 C.F.R. § 1614.302(b).

B

This case involves the interaction between the mixed case regime and the doctrine of exhaustion of administrative remedies. As a general matter, that doctrine requires a plaintiff to pursue relief through an available administrative

---

[3] There is also an additional potential review by a "special panel" comprised of a representative from the EEOC and MSPB and a third person who is appointed by the President and confirmed by the Senate for a six-year term. 5 U.S.C. § 7702(d); *Sloan*, 140 F.3d at 1260. The decisions of this panel may also be appealed to the district court. 5 U.S.C. § 7702(d)(2)(A). The details of the special panel process are beyond the scope of this appeal.

agency process before filing suit in federal court.  *See, e.g.*, *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006).  Thus, although the scheme we have outlined above does give federal employees with mixed cases some options in terms of the administrative process they wish to pursue, they must exhaust one of the available processes before filing a case in federal court.  *See* 5 U.S.C. § 7703(b)(2) (CSRA); 42 U.S.C. § 2000e-16(c) (Title VII); 29 C.F.R. § 1614.310; *Brown v. General Servs. Admin.*, 425 U.S. 820, 832 (1976); *Punch v. Bridenstine*, 945 F.3d 322, 328 (5th Cir. 2019).

The primary exhaustion question in this case is whether Crowe was required to exhaust before the MSPB claims relating to his pre-termination adverse employment actions—the investigation into Crowe, the changes to his duties, and his proposed termination.  To answer the exhaustion question, we must examine in greater depth the scope of the MSPB's jurisdiction in mixed cases.  If the MSPB lacks jurisdiction to consider claims of discrimination relating to these types of adverse actions, Crowe would of course not have been required to raise these claims before the MSPB.

As we referenced above, a federal employee "may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation."  5 U.S.C. § 7701(a).  With some exceptions not relevant here, the CSRA specifies that the "actions covered" for purposes of the MSPB's jurisdiction are: "(1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less."  *Id.* § 7512.  These are the "particularly serious" adverse personnel actions that we referenced above.  *Kloeckner*, 568 U.S. at 44.

It is clear from the statute that in the absence of one of the five qualifying "particularly serious" adverse actions, the MSPB lacks jurisdiction. As we have stated, "[t]he MSPB does not possess jurisdiction over claims that do not fall into one of the five 'adverse action' categories outlined in 5 U.S.C. § 7512." *Sloan*, 140 F.3d at 1260; *see also Kloeckner*, 568 U.S. at 44 (explaining that the MSPB has jurisdiction "[i]f (but only if)" the employment action is one of the statutorily prescribed "particularly serious" actions). There is no suggestion that Crowe's pre-termination adverse personnel actions fall into any of the five qualifying actions set forth in § 7512. These actions on their own would not be appealable to the MSPB.

The Army argues that in this case, however, Crowe *was* required to bring these claims before the MSPB. Its theory is one of pendent jurisdiction. The Army maintains that because Crowe's termination *was* a qualifying action over which the MSPB had jurisdiction under § 7512, Crowe was thereby required to exhaust before the MSPB any pre-termination discrimination claims that were *factually related* to his termination. According to the Army, "[w]here a plaintiff initially filed an EEO complaint relating to matters that eventually culminate in an action appealable to the MSPB, and he subsequently appeals that matter to the MSPB as a mixed case . . . , he is required to exhaust all related claims . . . in the MSPB before filing a civil action."

The problem with this argument is that it lacks any basis in the text of the CSRA. "The Board has only that jurisdiction conferred on it by Congress." *Cruz v. Dep't of Navy*, 934 F.2d 1240, 1243 (Fed. Cir. 1991) (en banc). When construing the jurisdictional limits Congress has authored, we must give effect to the statute's plain and ordinary meaning, reading the language as a whole and

evaluating the words used with an eye to the surrounding textual context. *E.g.*, *S.F. Herring Ass'n v. U.S. Dep't of the Interior*, 33 F.4th 1146, 1152 (9th Cir. 2022).

The CSRA spells out the MSPB's jurisdiction over mixed cases:

> (a)(1) Notwithstanding any other provision of law, and except as provided in paragraph (2) of this subsection,[4] in the case of any employee or applicant for employment who--
>
> > (A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, and
> >
> > (B) alleges that a basis for the action was discrimination prohibited by [one of several antidiscrimination laws] . . .
> >
> > the Board shall, within 120 days of the filing of the appeal, decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures under section 7701 of this title and this section.

5 U.S.C. § 7702(a)(1).

Nothing in the text of this provision states that if the MSPB has jurisdiction over a sufficiently serious adverse employment action (like a termination), that it then has

---

[4] The reference in § 7702 to "except as provided in paragraph (2) of this subsection" does not carve out an exception to the MSPB's jurisdiction. It is merely a reference to the fact that the employee may initially pursue his mixed case in his agency through the EEO process. *See* 5 U.S.C. § 7702(a)(2).

pendent jurisdiction over claims for all *other* allegedly discriminatory personnel decisions that are factually related to the jurisdiction-enabling adverse action.   Instead, the statutory text in § 7702 runs directly counter to that suggestion.   Subsection (a)(1)(A) provides that for the MSPB to have jurisdiction, the employee must "ha[ve] been affected by *an action* which the employee or applicant may appeal to the Merit Systems Protection Board."   *Id.* § 7702(a)(1)(A) (emphasis added).   The MSPB in that circumstance may then determine whether "a basis for *the action* was discrimination prohibited by" various listed anti-discrimination laws.   *Id.* § 7702(a)(1)(B) (emphasis added).

The specific use of the singular—"the action"—is a clear reference to the appealable "action" that gave rise to the MSPB's jurisdiction, that is, one of the specifically identified "particularly serious" adverse employment actions set forth in § 7512.   *Kloeckner*, 568 U.S. at 44.   The Army points to the last part of § 7702(a)(1), which states that the MSPB shall "decide both the *issue of discrimination* and the appealable action."   5 U.S.C. § 7702(a)(1) (emphasis added). But the "issue of discrimination" is in context discrimination in connection with "the action" that the employee is permitted to appeal to the MSPB.   It is not *any* issue of discrimination, or any issue of discrimination that is factually related to the appealable adverse action.   The statute does not say either of those things.   Sections 7512 and 7702 are instead narrowly drawn to give the MSPB jurisdiction to consider certain adverse personnel actions, as well as unlawful discrimination in relation to *those* actions. But here, the MSPB's jurisdiction extends no further.   If Congress, contrary to § 7512, had wanted to give the MSPB the authority to consider discrimination claims in connection with lesser adverse employment actions over which it would

otherwise lack jurisdiction, Congress "could have just said so." *Kloeckner*, 568 U.S. at 52.

Our construction of the statute makes some sense given the role of the MSPB. The MSPB "was created to ensure that all Federal government agencies follow Federal merit systems practices." 5 C.F.R. § 1200.1. But the MSPB's jurisdiction is reserved for the more significant adverse employment actions. *Kloeckner*, 568 U.S. at 44. The MSPB, tasked with monitoring the federal civil service rules, *Sloan*, 140 F.3d at 1258–59, evaluates certain adverse employment actions irrespective of the reasons why they may be invalid. When federal employees allege wrongful discrimination before the MSPB, courts have thus regularly described these employees as raising an "affirmative defense" to an adverse employment action. *See, e.g.*, *Jonson v. FDIC*, 877 F.3d 52, 56 n.5 (1st Cir. 2017); *Diggs v. Dep't of Hous. & Urb. Dev.*, 670 F.3d 1353, 1355 (Fed. Cir. 2011) (per curiam); *Butler v. West*, 164 F.3d 634, 636 (D.C. Cir. 1999); *Williams v. Dep't of Army*, 715 F.2d 1485, 1487 (Fed. Cir. 1983) (en banc). Indeed, before the MSPB, Crowe himself described his alleged sexual orientation discrimination as an "Affirmative Defense" to his removal. It would be inconsistent with the long-held understandings of the role of the MSPB and the function of the discrimination objection in a mixed case appeal to treat Crowe as having affirmative defenses to lesser personnel decisions over which the MSPB does not have jurisdiction in the first place.

In sum, neither the text nor structure of the CSRA supports the theory that if the MSPB has jurisdiction over a mixed case, it then has pendent jurisdiction to decide factually related claims of discrimination associated with personnel actions outside the list of "particularly serious"

actions set forth in 5 U.S.C. § 7512. Such discrimination claims must instead be exhausted through the EEO process.

C

Ninth Circuit precedent on the exhaustion question before us is relatively limited, but our reading of the statutory text is consistent with our case law. In particular, our decision in *Kerr v. Jewell*, 836 F.3d 1048 (9th Cir. 2016), is supportive of Crowe's position. In that case, a federal employee at the Fish and Wildlife Service (FWS) alleged that, on the basis of her sex and religion, she was given a poor performance review, a warning letter, and a 60-day reassignment to a different duty station. *Id.* at 1050–51. She also alleged that she was removed from employment for the same discriminatory reasons. *Id.*

We explained that the plaintiff's "Title VII claims challenging the less serious personnel actions (the negative performance evaluation, the warning letter, and the 60-day detail) had to be presented to FWS's EEO office." *Id.* at 1055. But we noted that her "Title VII claims challenging her removal (her mixed case) could have been presented initially to *either* FWS's EEO office or the MSPB." *Id.* (emphasis in original). Consistent with our interpretation of the CSRA, *Kerr* did not treat as part of the employee's mixed case those discrimination claims that related to the lesser adverse employment actions that were not otherwise within the MSPB's jurisdiction. And we adhered to that understanding even though it is apparent that the various claims of discrimination were all factually related. *See id.* at 1051–52.

Our decision in *Sloan* does not suggest any different approach. *Sloan* did not involve the exhaustion of administrative remedies. Regardless, as we noted above,

*Sloan* specifically recognized that "[t]he MSPB does not possess jurisdiction over claims that do not fall into one of the five 'adverse action' categories outlined in 5 U.S.C. § 7512." 140 F.3d at 1260. *Sloan* did note at one point that "the MSPB may not exercise jurisdiction over a claim of discrimination that is completely divorced from a personnel action otherwise within its jurisdiction pursuant to § 7512." *Id.* That much, of course, is true. But *Sloan* did not suggest that "complete divorcement" from an appealable claim was the actual test for determining which claims could go to the MSPB, such that discrimination claims that were factually related to appealable claims were thereby *within* the MSPB's jurisdiction. *Sloan* does not imply that rule. Indeed, *Sloan* does not speak to these issues at all.[5]

In its discussion of the CSRA mixed case scheme, *Sloan* twice cited the Eighth Circuit's decision in *McAdams v.*

---

[5] We note as well that the core holding of *Sloan* is no longer good law. *Sloan* held that when the MSPB in a mixed case concludes that it lacks jurisdiction, the matter is reviewable in the Federal Circuit, not the district courts. 140 F.3d at 1262 (holding that "appeals of MSPB jurisdictional decisions involving mixed claims are properly venued in the Federal Circuit Court of Appeals"). For this, *Sloan* relied on, among other authorities, *Ballentine v. MSPB*, 738 F.2d 1244, 1247 (Fed. Cir. 1984). *See Sloan*, 140 F.3d at 1261 & n.18. But in *Perry*, the Supreme Court rejected this position, holding that just as the MSPB's dismissals of mixed cases on procedural grounds are reviewed in district courts and not the Federal Circuit, *see Kloeckner*, 568 U.S. at 50, that "review route remains the same when the MSPB types its dismissal of a mixed case as 'jurisdictional.'" *Perry*, 582 U.S. at 423. *Perry* thus explicitly "disapprove[d] *Ballentine*'s holding with respect to jurisdictional dismissals." *Id.* at 434 n.8. We have cited *Sloan* at several points in our decision here because it contains a helpful overview of the general statutory and regulatory scheme governing mixed cases. All the points for which we have cited *Sloan* remain good law. But *Sloan*'s actual rule of decision does not.

*Reno*, 64 F.3d 1137 (8th Cir. 1995), including on the "completely divorced" point. *See Sloan*, 140 F.3d at 1259–60. *McAdams*, like many cases in this area, involved a complex procedural history. But as relevant here, *McAdams* held that a federal employee had failed to exhaust a Title VII hostile work environment claim because she did not raise it before the MSPB. 64 F.3d at 1142–43. The plaintiff had brought before the MSPB claims relating to her demotion and removal, which were within the MSPB's jurisdiction. *Id.* at 1143. The Eighth Circuit held that the plaintiff should also have brought her hostile work environment claim before the MSPB because it was "related to, and nearly dependent on, two appealable actions," *i.e.*, the demotion and removal. *Id.*; *see also id.* (noting that the plaintiff's "EEO complaints and the Title VII claims in this case raised similar issues arising out of overlapping facts").

The situation would be different, the Eighth Circuit allowed, "[i]f a harassment or hostile work environment claim is not related to an appealable action," in which case "separate EEO and MSPB actions would be appropriate." *Id.* at 1144. But because the plaintiff's hostile work environment claim was factually intertwined with the removal and demotion claims over which the MSPB had jurisdiction, *McAdams* held that the plaintiff was also required to raise her hostile work environment claim before the MSPB.

Although we do not lightly disagree with another circuit, *McAdams* is not persuasive, and we respectfully decline to follow it. *McAdams* did not even attempt to locate its "factual relatedness" test in the text of the CSRA. Nor did it cite any authority supporting its expansive view of the MSPB's jurisdiction. *McAdams* was also decided in 1995, well before the EEOC and MSPB issued decisions (which

we discuss below) that adopted the same general approach we adopt here. *McAdams* thus lacked the benefit of these agency decisions, which we find persuasive. Our decision in *Sloan* did, as we have noted, cite *McAdams*. *See Sloan*, 140 F.3d at 1259–60. But *Sloan* did not embrace *McAdams*'s "relatedness" test, nor could it have done so, since the case did not involve these exhaustion issues.[6]

### D

Our reading of the CSRA also aligns with the guidance and precedents of both the MSPB and EEOC—the agencies that most frequently deal with these issues. After some initial uncertainty, the agencies have generally coalesced around the position we adopt here.

Initially, the EEOC provided guidance more consistent with the Eighth Circuit's approach. In a 1999 Management Directive 110 sent to government agencies, the EEOC explained that:

> ***Where a complainant has pending a non-mixed case complaint or a series of non-mixed case complaints and the claims raised in those complaints are inextricably intertwined with an appeal on a claim that is appealable to the MSPB***

---

[6] In *Chappell v. Chao*, 388 F.3d 1373, 1377–79 (11th Cir. 2004), the Eleventh Circuit favorably cited *McAdams*'s "factual relatedness" approach. But *Chappell* concerned the different issue of whether a plaintiff waived the right to proceed with discrimination claims in federal district court when he appealed the non-discrimination aspect of his mixed case to the Federal Circuit. *Id.* at 1378–79. That scenario is not presented here. *Chappell* also pre-dated most of the MSPB and EEOC decisions and guidance that we discuss next.

The agency should file with the MSPB a motion to consolidate the non-mixed case claim with the mixed case appeal. . . . This provision is specifically meant to address those situations where a series of events, connected in time or type, culminate in an appealable action against a person with standing to appeal to the MSPB. For example: minor discipline, warnings or other claims may form the basis for a non-mixed case, but ultimately lead to suspension in excess of 14 days or termination; similarly, an allegedly discriminatory performance evaluation and subsequent placement on a performance improvement plan are non-mixed claims that may culminate in denial of a within-grade promotion, or even in removal, both of which are appealable to the MSPB.

EEOC, *Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614*, at ch. 4, pt. II.B.4.d & n.4 (1999) ("1999 EEO-MD-110").

In 2003, however, the EEOC changed course. In a Management Bulletin, the EEOC explained that it "ha[d] been notified by the MSPB" that the directive in its 1999 EEO-MD-110—to consolidate in the MSPB non-mixed case complaints with factually related mixed case appeals—was "improper procedurally, in that it constitutes a request for an MSPB Judge to hear matters which may not be within the jurisdiction of the MSPB." *See* EEOC, *Management Bulletin 100-1* (Oct. 24, 2003) ("MB 100-1"). As a result of the MSPB's notification, the EEOC issued Management

Bulletin 100-1 (MB 100-1), which specifically instructed agencies to "immediately delete" the implicated language from their existing copies of the 1999 EEO-MD-110. *Id.*

The EEOC provided a further update to its guidance in the 2015 revisions to Management Directive 110. EEOC, *Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614*, (rev. 2015) ("2015 EEO-MD-110"). This new version provides that, for the mixed case regulations to apply, "the claim that forms the basis of the discrimination complaint must be appealable to the MSPB." *Id.* at ch. 4, pt. II.B. This Directive makes clear that the MSPB's jurisdiction over appealable matters does not extend to related non-appealable matters. *Id.* (citing EEOC precedent that "essentially overturned the doctrine of inextricably intertwined").

Meanwhile, in 2005, the MSPB formally rejected the "inextricably intertwined" doctrine that the Army would have us adopt. In *Lethridge v. United States Postal Service*, 99 M.S.P.R. 675 (M.S.P.B. 2005), the federal employee appealed to the MSPB following his removal from the Postal Service, alleging disability discrimination. *Id.* at 676. The employee had also filed three related EEO complaints alleging discrimination in connection with (1) the denial of a reasonable accommodation and placement in a non-pay status, (2) the ending of his detail assignment, his supervisor calling him a "bastard," and his being informed of his impending termination, and (3) a notice of proposed removal. *Id.* at 676–77. The EEOC consolidated the EEO complaints and ruled that they "cannot sensibly be disassociated from the termination claim" pending before the MSPB, "and that the entire matter must be referred to the MSPB." *Id.* at 677–78. The employee then submitted the claims to the MSPB.

In a precedential opinion, an MSPB appellate panel held that the MSPB lacked jurisdiction over all three claims. *Id.* at 678–81. Just as we reasoned above, the MSPB found "nothing in the plain language of sections [5 U.S.C. §§] 7512, 7513(d), and 7702(a)(1), that suggests that the Board has jurisdiction over otherwise non-appealable actions, such as those at issue here, when those actions are allegedly 'inextricably intertwined,' or 'cannot sensibly be bifurcated,' with otherwise appealable actions." *Id.* at 679. Or, put another way, "section 7702(a)(1) provides that the Board shall decide the issue of discrimination 'and the appealable action,' not issues of discrimination in connection with non-appealable actions." *Id.*

*Lethridge* also located its rule in other sources beyond the statutory text. It relied on the CSRA's legislative history, which indicated that "'[i]n the case of discrimination complaints involving personnel actions not otherwise appealable to the Board, the Commission [EEOC] will have full responsibility for deciding the matter,' and that '[t]he jurisdiction of the Board is determined entirely by the nature of the personnel action taken, not by the kind of legal or factual arguments raised or the procedures used to raise the discrimination issue.'" *Id.* at 679–80 (alterations in original) (quoting S. Rep. No. 95–969, at 53, 56 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2775, 2778). *Lethridge* further relied on the fact that, as we discussed above, the EEOC in 2003 had changed its own guidance, withdrawing its prior directive that claims relating to otherwise non-appealable matters be consolidated in the MSPB with factually related appealable claims. *Id.* at 680.

*Lethridge* recognized that there may be "valid policy reasons for the [MSPB] to consider non-appealable actions with appealable actions, such as the avoidance of allegedly

inconsistent results." *Id.* But this did not change matters because "the Board cannot expand its limited jurisdiction to address those policy concerns." *Id. Lethridge* did go on to state that "[i]n any event, we find that there are distinct actions at issue in the appellant's EEO complaints and his [MSPB] appeal that, if adjudicated, would not necessarily produce inconsistent results." *Id.* But this aside does not take away from *Lethridge*'s clear holding that the MSPB lacked pendent jurisdiction over otherwise non-appealable matters, even if factually related to an appealable claim.

Later decisions from the MSPB follow this rule from *Lethridge. See, e.g.*, *Desjardin v. U.S. Postal Serv.*, 2023 WL 2170811, at ¶ 25 (M.S.P.B. Feb. 22, 2023); *McDermott v. U.S. Postal Serv.*, 2015 WL 5943662, at ¶¶ 26–28 (M.S.P.B. Oct. 13, 2015); *Webster v. Dep't of Energy*, 2015 WL 4069357, at ¶¶ 44–45 (M.S.P.B. July 6, 2015); *Wilson v. Dep't of Veterans Affs.*, 2006 WL 1375031, at ¶¶ 8, 13 (M.S.P.B. May 11, 2006). Of course, to the extent there is any imprecision within the MSPB's decisions post-*Lethridge*, our decision today may provide occasion for the MSPB to consider whether to issue clearer guidance to those whom it serves.

In its briefing, the Army identified a few EEOC decisions in which the EEOC referenced the "inextricably intertwined" doctrine, notwithstanding its contrary 2003 Management Bulletin and 2015 Management Directive. *See, e.g.*, *Venetta S., Complainant*, EEOC DOC 2020000414, 2020 WL 5994724 (Sept. 9, 2020); *Belkis D., Complainant*, EEOC DOC 2021000093, 2021 WL 1072293 (Mar. 2, 2021); *Maximo S., Complainant*, EEOC DOC 2020003877, 2020 WL 6165645 (Oct. 7, 2020).

But, in addition to the formal directives we discussed above, other recent EEOC decisions explicitly reject the doctrine. *See, e.g.*, *Melani F., Complainant*, EEOC DOC 2022002288, 2022 WL 3153835 (July 19, 2022) ("[T]he doctrine of 'inextricably intertwined' is no longer applicable in most circumstances because the MSPB generally does not have jurisdiction over non-appealable matters, even if they are related to appealable matters."); *Willia M., Complainant*, EEOC DOC 0120181909, 2019 WL 1397652 (Mar. 15, 2019) ("[T]he doctrine of 'inextricably intertwined' was overturned because the MSPB generally does not have jurisdiction over non-appealable matters, even if they are related to appealable matters.").

In sum, it appears that both the MSPB and the EEOC have now for some time (if not with perfect consistency) taken the position that the MSPB does not have jurisdiction over otherwise non-appealable employment actions that may be factually related to an appealable one. We do not give these agency decisions any deference, nor do we defer to the MSPB's amicus brief in this case. Because we find the general positions of the MSPB and EEOC persuasive, we have no occasion to decide whether any deference might be warranted. The MSPB's interpretation of the text of the CSRA in *Lethridge* mirrors our own. And the general approach that both agencies have now long followed is the approach we adopt here.

E

That the MSPB and EEOC share our view of the statutory scheme leads to some important practical benefits. Although we could not endorse agency practice if it were contrary to the text of the statute, a welcome consequence of our decision today is that it does not upend what is now at

least two decades of MSPB and EEOC guidance and rulings on the question of whether factually related discrimination claims may be swept in to the MSPB's mixed case jurisdiction.

This also means that if a federal employee files in the MSPB a mixed case appeal along with other claims over which the MSPB lacks jurisdiction, the MSPB can be expected to direct the employee to re-file the non-appealable claims in the EEO process. *See* 29 C.F.R. § 1614.302(b). As we noted in *Sloan*, "[o]rdinarily, if the MSPB finds it lacks jurisdiction over either the entire case, or over one of the claims, it will dismiss the complaint and/or claims" and "advise the employee to seek appropriate review of any extra-jurisdictional non-discrimination claims through other channels," including EEO administrative procedures. 140 F.3d at 1260–61.

We understand that there are some potential practical downsides to our interpretation of the statute, most notably that factually related claims may need to be brought before both the EEO offices and the MSPB, to the extent employees wish to pursue mixed case appeals before the MPSB. Even though the MSPB's jurisdiction is limited to *adjudicating* appealable actions, it appears the MSPB will consider other agency actions *as evidence* in deciding whether the appealable action was discriminatory. *See, e.g.*, *Desjardin*, 2023 WL 2170811, at *7. The MSPB acknowledged the same point at oral argument. Stays of administrative proceedings may ameliorate some of the difficulties associated with raising factually related claims before both an EEO office and the MSPB, and we understand that such stays are sometimes entered when an employee has factually related claims pending in multiple administrative fora. But even so, one could reasonably argue that if the employee

with a mixed case is going to proceed before the MSPB, it would be more efficient if all the claims—appealable claims and factually related claims—could all be administratively exhausted before that entity.

There is, however, a simple answer to this: our role is not to devise a "better" administrative scheme than the one Congress enacted. "[P]ractical difficulties . . . do not justify departure from the [statute's] plain text." *E.P.A. v. EME Homer City Generation, L.P.*, 572 U.S. 489, 509 (2014). Congress clearly envisioned a division of responsibility between the MSPB and EEO offices, such that federal employees would need to raise some types of claims before one or the other. All we have done is give effect to Congress's twin choices to limit the MSPB's jurisdiction to certain "particularly serious" adverse employment actions, 5 U.S.C. § 7512; *Kloeckner*, 568 U.S. at 44, and to tie the MSPB's authority over claims of discrimination to those specific types of employment actions over which the MSPB has jurisdiction, 5 U.S.C. § 7702(a)(1).

We cannot speculate why Congress may have set things up this way. To the extent the "mixed case" regime was intended to avoid "protract[ed] proceedings" and "increas[ed] costs," *Perry*, 582 U.S. at 423, one can reasonably question whether the complex legal architecture in this area is serving those objectives. But we note that in this instance, there is possible logic behind Congress's setup: it is at least a clear rule. If an employee wants to bring a mixed case appeal before the MSPB, it must concern one of the five "particularly serious" adverse employment actions in 5 U.S.C. § 7512, full stop. Discrimination claims concerning other lesser employment actions must go through the EEO process. The regime may seem arbitrary, but if two administrative bodies are to be involved, it is at least

apparent which claims may be taken to which forum. To this point, we note that after some initial confusion before he obtained counsel, Crowe properly navigated this administrative regime.

There is, meanwhile, a significant downside of a *McAdams*-style "factually related" or "inextricably intertwined" test: it may often be unclear when such a test is met. Employees who suffer one of the five "particularly serious" adverse actions within the MSPB's jurisdiction may view those employment decisions as arising from a series of perceived indignities, demerits, and workplace issues that occur over time. In each case, this would present the question of just how related these other actions must be to the more serious action that enabled the MSPB's jurisdiction. That uncertain inquiry could well lead to confusion over where claims should be exhausted. Especially considering that many CSRA claimants are unrepresented in the administrative process, *see Perry*, 582 U.S. at 423 n.1, a regime that turns on a "factually related" standard could fail to provide "clear guidance about the proper forum for the employee's claims at the outset of the case." *Elgin*, 567 U.S. at 15. But in any event, whether the statute reflects sound policy or not, we must interpret it according to its terms. That is what we have done here.

F

We now apply our interpretation of the CSRA and implementing regulations to Crowe's claims of pre-termination discrimination. These adverse personnel actions again consist of the following: the Army's investigation into Crowe; his temporary reassignment to administrative duties and related removal of his police powers (including deprivation of overtime); and his proposed termination.

None of these adverse actions is among the five "particularly serious" actions over which the MSPB has jurisdiction in mixed cases.  5 U.S.C. §§ 7512; 7702(a)(1); *Kloeckner*, 568 U.S. at 44.

We therefore hold that Crowe did not fail to exhaust these claims before the MSPB because the MSPB lacked jurisdiction to consider them.  Under the statute, Crowe is properly understood not as having impermissibly pursued a "mixed case complaint" and a "mixed case appeal" "on the same matter," 29 C.F.R. § 1614.302(b), but as having permissibly pursued a "mixed case appeal" and several non-mixed EEO complaints.  Crowe accomplished this result once he withdrew his termination claim from the EEO process and re-filed it before the MSPB as a mixed case appeal.

In the case of Crowe's proposed termination, we note that there is some authority from the EEOC suggesting that, notwithstanding the EEOC's rejection of the "inextricably intertwined" doctrine, a *proposed* termination is nonetheless part of the mixed case and within the MSPB's jurisdiction. *See, e.g.*, *Robert L. Wilson, Complainant*, EEOC DOC 0120122103, 2012 WL 4320987 at *2 (Sept. 10, 2012) ("The doctrine of inextricably intertwined was effectively overturned . . . .  We note, however, that a proposed action merges with the decision on an appealable action, i.e., a proposed removal merges into a decision to remove."); *see also* EEO MD-110 at Ch. 4 § II.B.4.d (2015).

The MSPB takes a different view.  *In Lethridge*, the MSPB held that it lacked jurisdiction to hear the employee's claim that his proposed removal was based on discrimination.  99 M.S.P.R. at 681.  The MSPB disagreed that it could consider the employee's proposed removal on

the theory that it "was intertwined with the agency's ultimate removal action over which the Board has jurisdiction," because "the applicable statutes limit the Board's jurisdiction to removals, not proposed removals." *Id.* The MSPB also cited authority from the Federal Circuit holding the same. *See Cruz*, 934 F.2d at 1243 ("Because mere proposals to remove are not listed in § 7512, they are not appealable adverse actions in themselves and the Board has no jurisdiction to consider them.").

The MSPB's position is the correct one: under the CSRA, the MSPB lacks jurisdiction to adjudicate claims of discrimination for proposed removals, and so Crowe was not required to exhaust this claim before the MSPB. The same is true of Crowe's other pre-termination claims.

## III

We have thus far limited our discussion of exhaustion to Crowe's pre-termination discrimination claims, but there is another exhaustion issue we must also resolve. In challenging his termination before the MSPB, the only form of discrimination Crowe alleged as an affirmative defense was sexual orientation discrimination. In the district court, it appears that Crowe tried to broaden his allegations, claiming that the Army also terminated him because of his race, sex, and in retaliation for complaining about Officer Oda's use of a homophobic slur. To the extent Crowe is now trying to argue that he was terminated for discriminatory reasons *other than* his sexual orientation, we hold that Crowe failed to exhaust these theories before the MSPB.

Having chosen to challenge his termination in a mixed case appeal before the MSPB, Crowe was required to raise before that body all theories of discrimination that he believed applied to that appealable personnel decision. This

obligation, known as "issue exhaustion," is "commonly require[d]" in administrative review schemes. *Carr v. Saul*, 141 S. Ct. 1352, 1358 (2021). Courts will sometimes require issue exhaustion even "[w]here statutes and regulations are silent." *Id.* But "it is common for an agency's regulations to require issue exhaustion in administrative appeals," and "when regulations do so, courts reviewing agency action regularly ensure against the bypassing of that requirement by refusing to consider unexhausted issues." *Sims v. Apfel*, 530 U.S. 103, 108 (2000); *see also Sears, Roebuck & Co. v. FTC*, 676 F.2d 385, 398 (9th Cir. 1982) ("Exhaustion rules insure an adequate record, prevent surprise, and avoid the application of judicial resources to matters which might be resolvable at the agency level. . . . [A]bsent exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative proceeding at the appropriate time." (quotation omitted)).

Here, the MSPB has promulgated regulations requiring issue exhaustion. *See* 5 C.F.R. § 1201.59(c).[7] Under those regulations, the MSPB "generally does not accept arguments raised after the close of the record before the administrative judge." *McClenning v. Dep't of the Army*, 2022 WL 985905 at *3 (M.S.P.B. Mar. 31, 2022) (citing 5 C.F.R. § 1201.59(c)). Based on these regulations, the MSPB requires a claimant to exhaust an issue before an AJ before the full Board's review panel will consider it. *Id.* at *3–6. Additionally, the Federal Circuit requires issue exhaustion

---

[7] That regulation provides that "[o]nce the record closes, additional evidence or argument will ordinarily not be accepted unless: (1) The party submitting it shows that the evidence or argument was not readily available before the record closed; or (2) It is in rebuttal to new evidence or argument submitted by the other party just before the record closed." 5 C.F.R. § 1201.59(c).

in appeals from the MSPB. *See, e.g.*, *Bosley v. MSPB*, 162 F.3d 665, 668 (Fed. Cir. 1998) ("[I]f the party fails to raise an issue in the administrative proceeding or raises an issue for the first time in a petition for review by the full Board, this court will not consider the issue."). For the same reasons, we conclude that an employee who pursues his mixed case in the MSPB and who seeks judicial review in the district court must first exhaust any theories of discrimination as to adverse employment actions over which the MSPB would have had jurisdiction.

To hold otherwise would compromise the statutory scheme. The entire structure of the "comprehensive system" that the CSRA creates, *Elgin*, 567 U.S. at 5—with its several layers of administrative and judicial review—presupposes that each step in the administrative (and judicial) process will build on the last. If an employee could bolster his mixed case in the district court with new theories never presented to the MSPB, the CSRA's extensive framework of administrative review would be rendered irrelevant as soon as the employee moved on to federal court. Congress surely did not construct this administrative labyrinth just for fun.

Having determined that issue exhaustion is required in MSPB proceedings, we conclude that Crowe failed to comply with this requirement for his theories that his termination was based on sex and race discrimination and in retaliation for protected activity. Even if Crowe raised these claims in the EEO process when he amended his EEO complaint to encompass his termination, Crowe voluntarily moved to dismiss his termination-based claims from his EEO complaint shortly thereafter so that he could raise them before the MSPB as a mixed case appeal. Crowe thus did not exhaust those claims through the EEO process (and could not have done so once he elected to pursue his mixed

case before the MSPB, *see* 29 C.F.R. § 1614.302(b)).  Nor did Crowe exhaust these claims in his MSPB appeal.  The only discrimination claim Crowe asserted there was a claim of sexual orientation discrimination.[8]  We thus hold that any other theories of discrimination that Crowe may wish to raise as to his termination are unexhausted.

IV

We now switch gears and turn to the one Title VII claim that the district court found exhausted and addressed on the merits: Crowe's claim that he was terminated based on his sexual orientation.  We review the district court's grant of summary judgment to the Army de novo.  *Silverado Hospice, Inc. v. Becerra*, 42 F.4th 1112, 1118 (9th Cir. 2022).  We construe the facts in the light most favorable to Crowe as the nonmoving party and determine if there is any genuine dispute of material fact.  Fed. R. Civ. P. 56(a); *O'Doan v. Sanford*, 991 F.3d 1027, 1035 (9th Cir. 2021).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First*

---

[8] Based on selective quotations from the MSPB AJ's initial decision and isolated statements Crowe's counsel made during the MSPB hearing, Crowe argues that he raised his termination-based retaliation claim before the MSPB.  We reject this argument.  Although the AJ occasionally used the term "retaliation" in her decision, including when discussing general legal standards, the AJ never addressed whether the Army retaliated against Crowe for reporting Officer Oda, further supporting that Crowe did not present such a theory to the MSPB.  That Crowe's counsel fleetingly mentioned retaliation a few times during a three-day hearing was also not sufficient to raise the issue before the MSPB.

*Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

To make out a prima facie case of discrimination under Title VII, the plaintiff may invoke the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and demonstrate that "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated persons outside his protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000). The plaintiff may "alternatively offer direct or circumstantial evidence of discriminatory motive to establish her prima facie case." *Opara v. Yellen*, 57 F.4th 709, 722 (9th Cir. 2023). Once the plaintiff makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. Assuming the employer does so, the burden then shifts back to the plaintiff to show that the employer's asserted nondiscriminatory reason is pretextual. *Id.* at 804.

The Supreme Court has now held that sexual orientation discrimination is actionable under Title VII. *See Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1737 (2020). But we agree with the district court that the Army is entitled to summary judgment on this claim. Although the district court concluded that Crowe's showing was so insufficient that he had not even made out a prima facie case, we will assume without deciding that he has. *See, e.g.*, *Hawn v. Exec. Jet. Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010) ("[A] plaintiff's burden is much less at the prima facie stage than at the pretext stage.").

Even so, the Army has clearly articulated sufficient, non-discriminatory reasons for removing Crowe based on his inappropriate workplace conduct. This principally included: regularly having sex with Garcia in a room at the TAMC during work hours; spending long periods of time gossiping with other employees while on duty; having inappropriate discussions with other employees about his romantic relationships; and confronting James Sewell about an alleged relationship with Garcia. It goes without saying that instances of workplace misconduct such as these quite plainly satisfy the Army's burden to produce evidence of valid, non-discriminatory reasons for terminating an employee.

The burden thus shifts back to Crowe to show pretext. He may do so "(1) directly, by showing that unlawful discrimination more likely than not motivated the employer," and/or "(2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Opara*, 57 F.4th at 723 (quoting *Chuang*, 225 F.3d at 1127) (alterations and quotations omitted). Crowe concentrates his pretext argument on Officer Oda's inappropriate comments and Oda's later role in interviewing employees for the investigation into Crowe's workplace behavior. But we agree with the district court that there is no genuine issue of material fact as to whether the Army's decision to terminate Crowe was pretextual.

Although Officer Oda conducted the interviews, he acted at the direction of Supervisory Officer Ballesteros. It was Ballesteros who decided to issue the notice of proposed removal to Crowe. And it was Deputy Provost Marshal Ingebredtsen who, after consulting with a subject-matter expert from the Civilian Personnel Office, made the

independent decision to terminate Crowe's federal employment. There is no evidence that either Ballesteros or Ingebredtsen harbored animus toward Crowe based on his sexual orientation. Indeed, there is no evidence that either man knew at the relevant times that Crowe was bisexual. *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) ("mere assertions" of "discriminatory motivation and intent" are "inadequate, without substantial factual evidence, to raise an issue precluding summary judgment"). Regardless, it is undisputed that when Crowe early on complained about Oda's homophobic language, Ballesteros took immediate action, counseling Oda that this was inappropriate and requiring Oda to apologize to Crowe.

To the extent Crowe argues that derogatory remarks always create a dispute of material fact as to unlawful discrimination regardless of the rest of the circumstances, our cases show that is not correct. *See, e.g.*, *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110–11, (9th Cir. 2000) (holding that a supervisor's usage of highly inappropriate sexist comments was not "frequent, severe or abusive enough to interfere unreasonably with [the plaintiff's] employment"); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642–44 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (holding that racist comments were "not severe or pervasive enough" to create a dispute of fact).

In short, there is no genuine dispute of material fact that Crowe was terminated because of his misconduct at the workplace, as opposed to his sexual orientation.

V

We turn lastly to Crowe's challenge to the MSPB's decision rejecting Crowe's claim under the CSRA and upholding his termination as supported by sufficient

evidence. Because Crowe's case before the MSPB was a mixed case, and because Crowe continued to challenge the discrimination component of that decision, Crowe properly sought review of the MSPB's resolution of his CSRA claim in the district court. *Perry*, 582 U.S. at 426 & n.3; *Washington*, 10 F.3d at 1428.

Our review of the MSPB's decision on Crowe's CSRA claim is deferential. We will not set it aside unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Sloan*, 140 F.3d at 1260 & n.16 (quoting 5 U.S.C. § 7703(c)); *see also Washington*, 10 F.3d at 1428.

Crowe has not demonstrated infirmity in the MSPB's resolution of his CSRA claim. Crowe's only argument is that the MSPB failed adequately to account for the fact that Garcia—who testified that she regularly had sex with Crowe while he was on duty—recanted her testimony and then ultimately recanted her recantation after the Army proposed firing her for making false statements. But the MSPB Administrative Judge (AJ) considered Garcia's recantation(s) and found that her testimony about her sexual encounters with Crowe at TAMC was "unequivocal, detailed, internally consistent, [and] consistent with the record." Further, while Garcia was "sincere and forthright," Crowe's "self-serving testimony" was not believable.

The AJ gave specific reasons for crediting Garcia's original statement over her recantation, including that the original statement was "likely made before Garcia fully understood the impact that her statement would have on both [Crowe] and herself," whereas her recantation "appear[ed]

more calculated and motivated by the exigencies of the circumstances in which she found herself at that time." The AJ also found that Garcia's testimony was supported by the statements of Tabangeura and Sam.

"Special deference" is given to the AJ's "credibility judgments." *Curran v. Dep't of the Treasury*, 714 F.2d 913, 915 (9th Cir. 1983). We conclude that substantial evidence supports the MSPB's finding that Crowe regularly had sex at TAMC during work hours. Crowe's CSRA claim thus fails.

*          *          *

To summarize our holdings: (1) we vacate the district court's decision that Crowe failed to exhaust administrative remedies before the MSPB with respect to his claims of pre-termination adverse employment actions, and we remand these claims for further proceedings; (2) we affirm the district court's determination that Crowe failed to exhaust before the MSPB any other discriminatory grounds for his termination besides sexual orientation discrimination; (3) we affirm the district court's grant of summary judgment to the Army on Crowe's Title VII claim alleging he was terminated because of his sexual orientation; and (4) we affirm the district court's grant of summary judgment to the Army on Crowe's CSRA claim. The parties shall bear their own costs on appeal.

**AFFIRMED in part, VACATED in part, and REMANDED.**

SCHROEDER, Circuit Judge, concurring:

I agree with the majority's outcomes, including its conclusion to remand the pre-termination claims to the district court. Given the Merit Systems Protection Board's ("MSPB") position that it will not decide any of plaintiff's claims other than the termination claim, no matter how closely related, we should not penalize the plaintiff for seeking to litigate them elsewhere. At the same time, I fully understand why the district court followed the only circuit decision on point. *See McAdams v. Reno*, 64 F.3d 1137 (8th Cir. 1995). The court had little choice. As the majority points out, the MSPB had fully articulated its position in *Lethridge v. United States Postal Service*, 99 M.S.P.R. 675 (M.S.P.B. 2005). That decision was not before the district court, even though the plaintiff's position was consistent with it. Indeed we did not have the benefit of that decision until after oral argument in this appeal, when the MSPB appeared as an amicus and we ordered re-argument. And, importantly, because the conflict was not apparent until after oral argument, the Department of Justice never had an opportunity to review the situation to guard against intergovernmental conflicts.

The unfortunate situation we face now is that two government entities are taking opposing positions with respect to the district court's jurisdiction to hear the pre-termination claims. Aware of the MSPB's position, the plaintiff has made a reasonable decision to seek a district court forum to litigate those claims. They include claims for damages that are independent of the damages sought in the termination claim, although all claims arise out of the same factual nexus.

Whether the MSPB's position on its jurisdiction is correct as a matter of law, I am uncertain. The majority notes there are downsides, and that is an understatement. Litigating related claims, stemming from the same facts, in two different forums, is expensive, time consuming, and can yield inconsistent results. Our civil litigation rules require such claims to be tried together. *See* Fed. R. Civ. 13(a). We are creating a circuit split that exacerbates this uncertainty, but, viewed most optimistically, may permit the Department of Justice to review this legal disarray and live up to its mission that the government "speaks with one voice in its view of the law." *See About the Division*, U.S. Dep't of Justice, Civ. Div. (2023), https://www.justice.gov/civil. This case illustrates why that is a worthy goal.