**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MEYER KAMA, an individual, | No. 23-55106 |
| *Plaintiff-Appellant*, | D.C. No. |
| v. | 2:20-cv-10265-VAP-AS |
| ALEJANDRO N. MAYORKAS, Secretary, United States Department of Homeland Security, a government entity, | OPINION |
| *Defendant-Appellee*. | |

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, Chief District Judge, Presiding

Argued and Submitted April 8, 2024
Pasadena, California

Filed July 18, 2024

Before: Eugene E. Siler,[*] Ronald M. Gould, and Carlos T.
Bea, Circuit Judges.

Opinion by Judge Gould

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S.
Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Title VII / Employment Law

The panel affirmed the district court's summary judgment in favor of the Secretary of Homeland Security in an action brought by a former transportation security officer with the Transportation Security Administration ("TSA") alleging Title VII retaliation after the TSA terminated plaintiff's employment.

The TSA terminated plaintiff's employment based on his failure to cooperate in an investigation into whether he received illegal compensation for serving as a personal representative assisting other employees during internal agency investigations.

Plaintiff contended that the TSA's stated reason for terminating him was merely a pretext to cover up unlawful retaliation. The panel held that the temporal proximity between the date of plaintiff's last formal EEO complaint and the date on which his employment was terminated was not sufficient in this case, by itself, to show pretext. First, the length of the gap of time between plaintiff's final EEO complaint and the termination of his employment was 56 days, which was considerably longer than in nearly all of the cases relied upon by plaintiff. Second, plaintiff's temporal proximity argument was undermined to some degree by the fact that there was also a temporal link between plaintiff's noncooperation and the TSA's adverse action.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel rejected plaintiff's list of circumstantial evidence that he claimed created an inference of pretext.

## COUNSEL

Edward J. Blum (argued), Law Office of Edward J. Blum, Los Angeles, California; for Plaintiff-Appellant.

Jill S. Casselman (argued), Assistant United States Attorney; David M. Harris, Assistant United States Attorney, Civil Division Chief; E. Martin Estrada, United States Attorney; United States Department of Justice, Los Angeles, California; for Defendant-Appellee.

## OPINION

GOULD, Circuit Judge:

Plaintiff Meyer Kama, who was formerly a transportation security officer ("TSO") with the Transportation Security Administration ("TSA"), brought this Title VII retaliation action against defendant Secretary of Homeland Security Alejandro Mayorkas after the TSA terminated Plaintiff's employment. Plaintiff contends that he engaged in protected activity under Title VII by lodging complaints with the TSA's Equal Employment Office ("EEO") regarding an alleged hostile work environment and the TSA's denial of Plaintiff's request for leave under the Family Medical Leave Act ("FMLA"). The district court granted summary judgment for Defendant, finding that Plaintiff had not established that the TSA's stated reasons

for terminating his employment were pretextual. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

### I. Facts

Plaintiff's EEO complaints span a period running from January 15, 2014 to February 19, 2015. Before and during the same period, the TSA—through a group of its supervisors ("Supervisors")[1]—conducted an internal investigation into whether Plaintiff and other TSOs had improperly received compensation for serving as personal representatives to other employees during internal agency investigations.[2] The TSA terminated Plaintiff's employment based on Plaintiff's purported failure to cooperate with the investigation. Plaintiff claims that the TSA's true motive for terminating his employment was retaliation for his having made EEO complaints.

In 2011, the TSA began an investigation into TSO Wilbert Sonnier, who the agency believed had received illegal compensation for serving as a personal representative assisting other employees during internal TSA investigations.

---

[1] For simplicity, the term "Supervisors" is used herein to refer to Michael Duretto, Brian Bondoc, Derrick Ford, Martin Elam, Ronald Young, and Raymond Hurst, even though some of these individuals may not have been Plaintiff's direct supervisors.

[2] Although not explained in the parties' briefing, it appears that the TSA allows an employee to appoint a non-attorney personal representative to speak for them during an internal agency investigation. However, employees are prohibited by law from receiving compensation for serving as personal representatives.

On November 2, 2011, Daisy Lopez, a TSO who had been interviewed as part of the investigation of Sonnier, indicated Plaintiff's possible involvement in the illegal compensation scheme. The TSA did not open an investigation into Plaintiff at that time.

Several years later, on January 15, 2014, Plaintiff requested informal EEO counseling based on an alleged hostile work environment centering on TSO Timothy Cochran. Supervisors Michael Duretto and Brian Bondoc were named among the allegedly responsible agency officials but were not accused of actively perpetuating the hostile work environment. Plaintiff alleges that Duretto, Bondoc, and TSA special agent Ronald Young became aware of Plaintiff's informal counseling on the same day.

In April 2014, Sonnier resigned, and the TSA closed its investigation of him.

On May 28, 2014, Plaintiff formalized the EEO complaint for which he had received counseling on January 15, 2014. Plaintiff alleges that Duretto, Bondoc, and Ford became aware of Plaintiff's formal complaint "at some point thereafter."

On June 23, 2014, TSA management—either Derrick Ford or Martin Elam—informed the TSA's Office of Inspection (the "OOI") of potential criminal conduct by Plaintiff in connection with the earlier-alleged scheme involving Sonnier.

On June 25, 2014, the OOI opened an investigation into Plaintiff that was supervised by special agent Young.

On October 1, 2014, the TSA denied Plaintiff's request for intermittent FMLA leave, which Plaintiff had submitted on an unspecified prior date.

On November 9, 2014, Plaintiff made "initial contact" with the EEO regarding a second complaint "setting forth complaints based on race, sex, color, age, and reprisal based on an October 1, 2014 denial for [sic] intermittent [FMLA] leave."

On November 19, 2014, Young interviewed TSO Deron Jones while investigating Plaintiff.  Young said to Jones: "Long story short, I've got a case against [Plaintiff] . . . I want you to give him up to me. . . . 'I got one [*i.e.*, Sonnier], I'll get the other [*i.e.*, Plaintiff].'"

On February 12, 2015, Young and the OOI presented their evidence against Plaintiff to the U.S. Attorneys' Office.

On February 17, 2015, the U.S. Attorney declined to prosecute Plaintiff and told Young and the OOI that they could administer a *Kalkines* warning to Plaintiff.[3]

On February 19, 2015, Plaintiff filed a formal EEO complaint based on the FMLA-related allegations first made to the EEO on November 9, 2014.

At various times between February 27 and March 13, 2015, Young and special agent Raymond Hurst interviewed and sent email requests to Plaintiff asking for information about the alleged scheme to receive compensation for serving as a personal representative to TSA employees.

---

[3] "A *Kalkines* warning is an advisement of rights based upon the U.S. Court of Claims ruling in *Kalkines v. United States*, 473 F.2d 1391 (Ct. Cl. 1973).  The warning is typically administered by United States federal government agents to federal employees in internal investigations.  It provides subjects with criminal immunity for their statements, but compels them to make statements or face disciplinary actions up to, and including, dismissal." *Kama v. Wolf*, Case No. 2:20-cv-10265-VAP-ASx, 2021 WL 4731352, at *2 n.2 (C.D. Cal. July 6, 2021) (internal quotation marks and citation omitted).

Plaintiff declined to answer some questions and document requests on relevance and unavailability grounds. For example, Plaintiff refused to turn over copies of his bank statements on the grounds that these statements were not relevant to whether he had received illegal compensation for serving as another employee's personal representative. Plaintiff requested that Sonnier be appointed as his personal representative during the investigation. Special agent Young denied Plaintiff's request because Sonnier was an earlier target of the investigation, creating a conflict of interest.

On March 26, 2015, Duretto sent Plaintiff a "Notice of Proposed Removal" indicating that Plaintiff's employment could potentially be terminated for "[f]ailure to cooperate in an Agency investigation."

On April 16, 2015, Supervisor Bondoc sent Plaintiff a "Notice of Removal" officially terminating his employment.

## II. Protected Activities and Alleged Retaliation

Plaintiff claims that he engaged in activities protected under Title VII when he made formal and informal EEO complaints on January 15, 2014, May 28, 2014, November 9, 2014, and February 19, 2015, and that the TSA retaliated against him for these complaints by taking an adverse employment action. The only predicate adverse employment action alleged by Plaintiff is the final "Notice of Removal" Plaintiff received on April 16, 2015. Plaintiff's case is based primarily on the temporal proximity between his final EEO complaint (on February 19, 2015) and the termination of his employment (on April 16, 2015), which dates were separated by 56 days. Plaintiff also alleges that a jury could infer a retaliatory motive from the circumstances of the TSA's investigation of him. Finally, Plaintiff

contends that a jury could infer retaliatory animus from the statements and conduct of Young.

## III.  Procedural Posture

The district court found that Plaintiff had made out a *prima facie* case of retaliation because a causal link between his EEO complaint and the termination of his employment plausibly could be inferred from the temporal proximity between the two events.  *Kama*, 2:20-cv-10265-VAP-AS, Dkt. 57 at 18-19.  The district court next found that the TSA had presented a legitimate non-retaliatory reason for terminating Plaintiff's employment based on his failure to cooperate in an investigation unrelated to his EEO complaints.  *Id.* at 20-21.  The district court concluded that Plaintiff could not establish that the TSA's proffered reason was pretextual because the temporal proximity between the key events was insufficient to create a genuine dispute of fact, and because most of Plaintiff's other evidence was irrelevant.  *Id.* at 22-24.  The district court granted Defendant's motion for summary judgment and dismissed Plaintiff's retaliation claim.  Plaintiff timely appealed.

## LEGAL STANDARD

## I.  Standard of Review

"This court reviews a district court's grant of summary judgment *de novo*."  *Dawson v. Entek Int'l*, 630 F.3d 928, 934 (9th Cir. 2011).  In reviewing a district court's grant of summary judgment, we view the evidence in the light most favorable to the nonmoving party.  *Id.*  "Summary judgment is warranted when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Maner v. Dignity Health*, 9 F.4th 1114, 1119 (9th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)).

## II.    Title VII Retaliation

The parties agree that this case is governed by the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that framework, a plaintiff must first establish a *prima facie* case of Title VII retaliation.  A *prima facie* case requires a plaintiff to adequately allege that: "(1) she engaged in an activity protected under Title VII; (2) her employer subjected her to adverse employment action; [and] (3) there was a causal link between the protected activity and the employer's action." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986).  The plaintiff's evidentiary burden is low.  "Under the *McDonnell Douglas* framework, the requisite degree of proof necessary to establish a *prima facie* case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Opara v. Yellen*, 57 F.4th 709, 722 (9th Cir. 2023) (cleaned up) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002)).  This minimal burden is doubtless justified by the fact that those discriminating against a person because of that person's protected activity may not, in their statements and documents, create direct evidence of discrimination, though the claim against them is equally justified as in a case where the discrimination has been admitted.

If a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate "some legitimate, nondiscriminatory reason for the challenged action." *Id.* at 723 (quoting *EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009)).  If such a reason is asserted, then the burden shifts back to the plaintiff to show that the asserted reason is merely a pretext for retaliation. *Id.*  A plaintiff can establish pretext "(1) directly, by showing that unlawful

discrimination more likely [than not] motivated the employer; [or] (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable; or via a combination of the[se] two kinds of evidence." *Id.* (internal quotation marks omitted) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000)). When assessing the validity of an employer's stated reason for its actions, the key is not whether the reason is "objectively false" or "baseless" but whether the employer "honestly believed its reasons for its actions." *Villiarimo*, 281 F.3d at 1063 (citation omitted) (holding it was irrelevant whether an employee who was fired for lying during an investigation had actually lied).

At the pretext stage, the plaintiff's burden remains low, and "very little[ ] evidence is necessary to raise a genuine issue of fact regarding an employer's motive." *Opara*, 57 F.4th at 723-24 (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004)). Nevertheless, a plaintiff must present some evidence that goes to the defendant's motivation—either by directly showing that it was discriminatory or by contesting the defendant's claimed motivation. *Villiarimo*, 281 F.3d at 1063; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may [be enough]."). If there is "abundant and uncontroverted independent evidence" supporting the defendant's stated motive, then "plaintiff's 'creat[ion of] only a weak issue of fact as to whether the employer's reason was untrue' will not suffice." *Opara*, 57 F.4th at 724 (quoting *Reeves*, 530 U.S. at 148).

Temporal proximity can support both a *prima facie* case of retaliation and a showing of pretext. *Miller*, 797 F.2d at 731-32. However, the inquiry is fact-specific and depends on both the degree of proximity and what, if any, other evidence supports an inference of pretext. *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003). Even cases involving very close temporal proximity have generally featured independent evidence of discrimination or retaliation. *E.g.*, *Strother v. Southern Cal. Permanente Med. Grp.*, 79 F.3d 859, 870-71 (9th Cir. 1996) (proximity of one day along with threats by employer and corroborating letters established pretext); *Dawson*, 630 F.3d at 937 (proximity of two days combined with employer's explicit reference to protected activity during termination established pretext); *Bell v. Clackamas Cnty*, 341 F.3d 858, 866 (9th Cir. 2003) (proximity of four days combined with evidence of supervisors' displeasure with protected activity supported retaliation claim); *Miller*, 797 F.2d at 732-33 (proximity of less than two months combined with fact that employer's lay-offs affected only employees who engaged in protected activity established pretext).

Evidence of temporal proximity is less persuasive if it also supports a defendant's independent reason for an adverse action. For example, in *Curley v. City of North Las Vegas*, the plaintiff-employee argued that "the fact that the City [had] fired him within two months of his protected activity is itself evidence of pretext." 772 F.3d 629, 634 (9th Cir. 2014). We acknowledged that temporal proximity may be enough in some cases but concluded that it was not enough in *Curley*. *Id.* We pointed to revelations about the plaintiff's misconduct that arose during the same two-month period and held that "the new information revealed by the City's investigation defeats any causal inference that might

otherwise follow from the temporal proximity between [the plaintiff's] protected activity and his termination." *Id.* We stressed that "even if Curley has established a *prima facie* case," "[t]he timing here . . . does nothing to refute the City's legitimate explanations for the adverse employment action." *Id. Curley* illustrates that when temporal proximity cuts both ways—*i.e.*, an adverse action follows on the heels of *both* a protected activity *and* an independent reason for adverse action—it might not be enough standing alone to establish pretext.

## DISCUSSION

The dispositive issue here is whether there is a genuine issue of material fact as to whether the TSA's stated reason for terminating Plaintiff's employment was a pretext for unlawful retaliation.[4] Plaintiff does not dispute that the TSA's stated reason for terminating Plaintiff's employment—Plaintiff's failing to cooperate with the TSA's investigation into suspected criminal activity by TSOs—is a legitimate and non-retaliatory reason. Plaintiff instead contends that this was not in fact why his employment was terminated, and that the TSA's stated reason was merely a pretext to cover up unlawful retaliation. Plaintiff relies primarily on the temporal proximity between the date of his last formal EEO complaint and the date on which his employment was terminated, and he claims that this proximity alone suffices to establish pretext. Plaintiff also cites other circumstantial evidence that purportedly raises a genuine dispute of fact even if we hold that temporal

---

[4] Although the TSA disagrees with the district court's determination that Plaintiff established a *prima facie* case of retaliation, we need not consider that issue because our decision on the issue of pretext is dispositive. *See Villiarimo*, 281 F.3d at 1062-63.

proximity is not enough by itself. We first address temporal proximity.

## I.  **Temporal Proximity**

Plaintiff advances temporal proximity as direct evidence, contending that the 56 days between his final EEO complaint and the termination of his employment is sufficient to show that "unlawful discrimination more likely [than not] motivated the employer." *Opara*, 57 F.4th at 723 (quoting *Chuang*, 225 F.3d at 1127). We hold, to the contrary, that temporal proximity alone in this case is not sufficient to show pretext.

Although we have held that temporal proximity alone can establish pretext "in some cases," we have made clear that it will not be enough in every case. *Villiarimo*, 281 F.3d at 1065; *see, e.g.*, *Hashimoto v. Dalton*, 118 F.3d 671, 679-80 (9th Cir. 1997) (holding that temporal proximity of "a few months" between a protected activity and an adverse employment action "suffices to establish a minimal *prima facie* case of retaliation, [but] it does nothing to refute the government's proffered legitimate reasons for disciplining [the plaintiff]"). Temporal proximity is like any other type of circumstantial evidence. If it is particularly strong, it may be enough by itself; otherwise, more evidence is required. Here, the evidence of temporal proximity is not particularly strong in showing pretext.

First, there is the length of the gap of time between Plaintiff's final EEO complaint and the termination of his employment, which was 56 days. We have rejected a bright-line rule for determining when temporal proximity implies causation, *Coszalter*, 320 F.3d at 977-78, but the degree of proximity nevertheless affects the relative strength of the evidence, *Clark Cnty Sch. Dist. v. Breeden*, 532 U.S. 268,

273-274 (2001) (*per curiam*) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality . . . uniformly hold that the temporal proximity must be 'very close.'" (citation omitted)). Indeed, in nearly all of the cases relied upon by Plaintiff, the protected activity and adverse action were separated by only a few days, and not by a period of time like 56 days. *See, e.g.*, *Dawson*, 630 F.3d at 937 (two days); *Bell*, 341 F.3d at 866 (four days); *Strother*, 79 F.3d at 870-71 (one day); *But see Miller*, 797 F.2d at 731 (less than two months). Even then, temporal proximity is typically accompanied by other evidence in cases concluding stated reasons were pretextual. *See, e.g.*, *Dawson*, 630 F.3d at 937 (stressing employer's explicit reference to protected activity during its termination of an employee); *Bell*, 341 F.3d at 866 (mentioning supervisors' contemporaneous displeasure with protected activity); *Strother*, 79 F.3d at 870-71 (noting that supervisor had threatened plaintiff to dissuade her from filing an EEO complaint); *see also Miller*, 797 F.2d at 731 (reasoning that employer's layoffs had exclusively affected employees who had engaged in protected activity). In our view, the case law as a whole does not indicate that the 56-day proximity alone in this case is compelling enough to establish pretext.

Plaintiff's temporal proximity argument is also undermined to some degree by the fact that there is also a close temporal link between Plaintiff's noncooperation (the stated reason for the termination of his employment) and the TSA's adverse action. Plaintiff's employment was terminated no more than 49 days after Plaintiff refused to cooperate with the TSA's investigation. As in *Curley*, temporal proximity here cuts both ways, supporting both

Plaintiff's inference of retaliation and the TSA's claimed independent basis for terminating Plaintiff's employment. When there are equally likely causes of Plaintiff's termination that arise during the same period, temporal proximity does not establish that "unlawful discrimination more likely [than not] motivated the employer." *Opara*, 57 F.4th at 723 (quoting *Chuang*, 225 F.3d at 1127).

## II.   Other Circumstantial Evidence

Plaintiff lists other circumstantial evidence that he claims creates an inference of pretext.  But the district court determined that most of this evidence was irrelevant because it "[went] to whether it was appropriate for the Agency to investigate Plaintiff in the first place—not whether its reason for terminating Plaintiff was pretextual." *Kama*, 2:20-cv-10265-VAP-AS, Dkt. 57 at 24.   We have grouped the evidence into categories and consider each in turn below.

### i.   Supervisors' Awareness of Plaintiff's EEO Complaint

Plaintiff contends that "a reasonable jury could infer retaliatory motivation alone from the evidence that [the TSA] personnel who participated in the decision to remove [Plaintiff] . . . were aware that [Plaintiff] filed a formal complaint of discrimination."

Supervisors' awareness of Plaintiff's protected activity is doubtless relevant to Plaintiff's retaliation claim, *see Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (reasoning that a decisionmaker's knowledge of protected activity is "essential" to causation), but Plaintiff cites no authority for the notion that Supervisors' awareness of protected activity is, in itself, persuasive evidence of pretext.

ii.  Timing of the TSA's Investigation

Plaintiff next suggests that a jury "could infer retaliatory motive from the fact that Elam . . . did not request that [Plaintiff] be investigated back in 2011 . . . [and] did so [only] after [Plaintiff's] prior protected EEO activity on January 15, 2014, and the failed attempt to prosecute Sonnier."

Plaintiff's argument on appeal does not align with his complaint. The Amended Complaint does not allege that the investigation itself was an adverse employment action.[5] Plaintiff's brief in opposition to the TSA's motion to dismiss expressly disclaimed this allegation: "To the extent Plaintiff has alleged adverse employment action in his . . . [retaliation] claim . . . other than his removal on April 16, 201[5] (*e.g.*, initiation of an unwarranted administrative inquiry beginning on or about June 25, 2014) . . . Plaintiff withdraws those alleged employment actions from consideration of Plaintiff's [retaliation] claim." Temporal proximity is generally relevant only to the extent that it establishes a causal link between a protected activity and an adverse employment action. *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

Even if the Amended Complaint adequately alleged that the investigation was pretextual, the five-month gap between Plaintiff's informal EEO complaint (January 15, 2014) and the start of the investigation (June 25, 2014), without more, places it at only the outer bounds of relevance.

Even when we generously construe the Amended Complaint to connect Plaintiff's 2014 EEO complaints to the

---

[5] Similarly, the Amended Complaint does not allege that the OOI's decision to open the investigation was pretextual.

start of the investigation, the temporal proximity between these events presents, at most, a "weak issue of fact" that is not enough to survive summary judgment. *See Opara*, 57 F.4th at 724 (citation omitted).

### iii. Young's Apparent Animosity Toward Plaintiff

Plaintiff points to Young's statement to Jones—that "I've got a case against [Plaintiff] . . . I want you to give him up to me. . . . 'I got one [*i.e.*, Sonnier], I'll get the other [*i.e.*, Plaintiff]'"—as evidence that "Young wanted to get [Plaintiff] despite not having any evidence of wrongdoing by [Plaintiff]."

Young's statement suggests only that Young strongly suspected Plaintiff of wrongdoing. This may demonstrate Young's animosity toward Plaintiff, but it does not demonstrate retaliatory animus, because there is no allegation connecting Young or his statements to Plaintiff's protected activity. It is undisputed that: Young never made any reference—during the meeting with Jones or otherwise—to the protected activity; Young was not a target of, or a responsible agency official named in, Plaintiff's EEO complaints; Young was not involved in the decision to deny Plaintiff FMLA leave; and Young was not the decisionmaker in Plaintiff's termination from employment. Young's mere awareness of Plaintiff's EEO complaint and Young's apparent animosity toward Plaintiff is insufficient for a reasonable jury to infer that the decisionmakers at the TSA

terminated Plaintiff's employment based on a retaliatory motive.[6]

### iv. Plaintiff's Cooperation with the TSA's Investigation

Plaintiff claims that "a reasonable juror could conclude that [Plaintiff] fully cooperated with [the TSA's] investigation and could infer retaliatory motive from the fact that [the TSA] concluded to the contrary."

However, Plaintiff's failure to cooperate in the investigation is not genuinely disputed. As the district court noted, Supervisors gave Plaintiff a *Kalkines* warning, which "provides subjects with criminal immunity for their statements, but compels them to make statements or face disciplinary actions up to, and including, dismissal." *Kama v. Wolf*, 2021 WL 4731352, at *2 n.2 (C.D. Cal. July 6, 2021). Plaintiff admits that he refused to respond to some of the inquiries during the investigation. For example, Plaintiff conceded that he refused to provide copies of personal bank statements on relevance grounds. Plaintiff does not deny that this refusal violated the terms of the *Kalkines* warning.

Moreover, even if there were a genuine dispute as to Plaintiff's noncooperation, an employer's "objectively false" or "baseless" reason for taking adverse action does not establish pretext, so long as the employer "honestly believed its reasons for its actions." *Villiarimo*, 281 F.3d at 1063.

---

[6] Plaintiff also points to Young's denial of Plaintiff's request to appoint Sonnier as his personal representative. But even assuming that the denial was unjustified, this fact also may go to Young's general animosity toward Plaintiff (and/or Sonnier) but does not show any connection to the protected activity or alleged retaliation.

Plaintiff does not challenge Supervisors' honest belief that Plaintiff had failed to cooperate.

Also, we note that Congress and other circuit courts have recognized that, given the TSA's "sweeping responsibility for airport security screening," the agency "must be given wide latitude to determine the terms of employment of screeners." *Field v. Napolitano*, 663 F.3d 505, 508 (1st Cir. 2011) (quoting H.R. Rep. No. 107-296, at 57). This logically encompasses the TSA's authority to enforce the terms of employment, including the investigation of the misconduct of which Plaintiff was accused. We must therefore give the TSA a wider latitude to carry out internal investigations than we might give to a private employer. The TSA stands charged with a duty to protect the nation from terrorist activity and crime that could touch upon mass transit, and it would be a grave error for a federal court to handcuff the agency's discretion to carry out that task.

## CONCLUSION

For the foregoing reasons, the district court's order granting summary judgment for Defendant Secretary Mayorkas is **AFFIRMED**.