NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 12 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

STEVEN W. CROWE,

      Plaintiff - Appellant,

  v.

MARK F. AVERILL, Acting Secretary of
the Army,

      Defendant - Appellee,

and

JOHN E. WHITLEY, CHRISTINE
WORMUTH, MARK T. ESPER, RYAN D.
MCCARTHY,

      Defendants.

No. 25-1400

D.C. No.
1:18-cv-00288-RT

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Hawaii
Rom Alex Trader, Magistrate Judge, Presiding

Argued and Submitted February 11, 2026
Honolulu, Hawaii

Before: BYBEE, R. NELSON, and FORREST, Circuit Judges.
Concurrence by Judge R. NELSON.

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Plaintiff-Appellant Steven Crowe appeals the district court's grant of summary judgment to his employer, the Department of the Army, on his pretermination claims of disparate treatment, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a), 2000e–3(a). The facts and proceedings are known to the parties and will be repeated only to explain our decision.[1] We reverse and remand.

We review a district court's grant of summary judgment de novo. *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1033 (9th Cir. 2005). In doing so, we view the evidence, and draw all reasonable inferences, in the light most favorable to the non-moving party and determine whether there are any genuine issues of material fact. *Id.* To survive a motion for summary judgment on a Title VII claim, a plaintiff's requisite degree of proof "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024) (internal quotation marks and citation omitted). The Title VII discrimination and retaliation claims are governed by the *McDonnell Douglas* burden-shifting framework. *Yartzoff v. Thomas*, 809 F.2d 1371, 1374–75

---

[1] In a published opinion, a previous panel of our court found that Crowe had not failed to exhaust administrative remedies on these pretermination claims and remanded to the district court to assess the merits. *Crowe v. Wormuth*, 74 F.4th 1011, 1022 (9th Cir. 2023). The panel also affirmed summary judgment to the Army on Crowe's termination claims, which are separate from the pretermination claims back before us. *Id.* at 1035.

(9th Cir. 1987). Under this framework, if Crowe establishes a prima facie case, the burden shifts to the Army to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 1374. If the Army does so, the burden then shifts back to Crowe to show that the proffered reason is pretextual. *Id.* at 1377.

1. Crowe first challenges the district court's grant of summary judgment to the Army on his Title VII discrimination claim. 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination, Crowe must show that "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hittle v. City of Stockton*, 101 F.4th 1000, 1011–12 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 759 (2025) (internal quotation marks and citation omitted).

The district court erred in finding that Crowe failed to satisfy the fourth element. The adverse employment actions occurred under circumstances giving rise to an inference of discrimination. *See Lui v. DeJoy*, 129 F.4th 770, 778 (9th Cir. 2025) (describing the fourth element "as a catch-all requiring only that the adverse action 'occurred under circumstances giving rise to an inference of [] discrimination'" (alteration in original) (citation omitted)). Between mid-2015 and early 2016, a co-worker and fellow police officer, Kevin Oda, referred to Crowe,

who is bisexual, as "faggot" and "fag" multiple times in front of their co-workers and supervisor. Less than two months later, management began investigating Crowe and ultimately removed his police powers, reassigned him to administrative duties, and initiated termination proceedings. Of particular concern is that Crowe's supervisor recruited Oda—the very officer who had directed slurs at Crowe and whom Crowe had reported less than two months earlier—to conduct the investigation. The supervisor further denied Crowe any meaningful opportunity to respond to the allegations despite his previously clean service record, and maintained that the slur could be appropriate and was inappropriate here only "[b]ecause Mr. Crowe complained about it." Accordingly, Crowe can establish a prima facie case.

The Army purported to discipline Crowe due to allegations that he engaged in inappropriate workplace gossip and had sexual relations while on duty. But there are facts in the record that suggest the adverse employment actions here were tainted by "subordinate bias." *Poland v. Chertoff*, 494 F.3d 1174, 1181–83 (9th Cir. 2007). Oda only took statements from people with personal vendettas against Crowe and refused to take statements from witnesses favorable to him. The supervisor testified that he reassigned Crowe and removed his police powers based solely on the statements Oda provided. Management did not independently assess the validity or credibility of the statements or offer Crowe a chance to respond until months later, after he had already been reassigned. *See Lui*, 129 F.4th at 780 (reversing summary

judgment because supervising employer's investigation consisted of crediting, without independent verification, employees' "written complaints even after hearing . . . concerns that their complaints were motivated by racial animus").

2. Crowe next challenges the grant of summary judgment on his retaliation claim. 42 U.S.C. § 2000e–3(a). To make out a prima facie case of retaliation, Crowe must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

Crowe has established a prima facie case of retaliation. Crowe engaged in protected activity when he reported Oda's use of the slur to his supervisors and when he formally contacted the EEOC. 42 U.S.C. § 2000e-3(a); *Ray v. Henderson*, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000). Crowe was subject to three adverse employment actions: (1) the investigation into workplace misconduct; (2) the removal of his police powers and reassignment; and (3) the threat of termination coupled with administrative leave. *Ray*, 217 F.3d at 1237 (holding that an adverse employment action is one "reasonably likely to deter employees from engaging in protected activity"); *Poland*, 494 F.3d at 1180 (holding that an "initiation of the administrative inquiry against" the plaintiff was one of two adverse employment actions).

The proximity in time between Crowe's protected activities and the adverse employment actions, with additional evidence, satisfies the third element. The investigation into Crowe began less than two months after Crowe reported Oda's harassment, and further disciplinary action occurred just 11 days after Crowe alleges his supervisor learned of his EEOC contact. *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 732–33 (9th Cir. 1986) (proximity of less than two months combined with knowledge of protected activity establishes prima facie case). The district court erred by failing to consider additional evidence supporting causation, including management's knowledge of Crowe's protected activities. *See Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011).

As with the discrimination claim, subordinate bias may have compromised the Army's stated reasons for the adverse employment actions. The evidence suggests that Oda, as a biased subordinate, acted with a retaliatory motive and influenced the adverse employment decisions. *See Poland*, 494 F.3d at 1183 ("[T]he biased subordinate's retaliatory motive will be imputed to the employer if the subordinate influenced, affected, or was involved in the adverse employment decision."). At the outset of the investigation, Oda stated that Crowe had "already been doing some other stuff . . . that's going to get him in trouble." Oda also testified that he was "disappointed" and had "less trust" in Crowe after Crowe reported the discriminatory harassment. *See Bell v. Clackamas Cnty.*, 341 F.3d 858, 866 (9th Cir.

2003) (evidence of displeasure with protected activity supported retaliation claim). Moreover, another employee observed that the investigation into Crowe came "across as management targeting Officer Crowe and appears to be *reprisal*." (emphasis added). Taken together, there is a genuine dispute of material fact as to whether the adverse employment actions were reprisals for Crowe's protected activity.

3. Finally, Crowe appeals the district court's grant of summary judgment on his hostile work environment claim. To establish a hostile work environment, Crowe must show that "he was subjected to verbal or physical harassment that was sexual in nature, that the harassment was unwelcome and that the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Dawson*, 630 F.3d at 937–38. This inquiry considers the totality of circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–23 (1993).

The district court erred by treating Oda's conduct as three isolated "offensive utterances" rather than considering the totality of the circumstances. Crowe alleges that he was the target of repeated uses of a homophobic slur. Discriminatory slurs

25-1400

and "epithets can offend and may transform a workplace into a hostile environment that violates Title VII." *Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 981 (9th Cir. 2023). In *Bostock*, the Supreme Court held that "discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 669 (2020); *see also Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1114, 1116–18 (9th Cir. 2023) (holding that, under *Bostock*, Title IX prohibits "homophobic bullying" and the use of "homophobic slurs" as discrimination on the basis of perceived sexual orientation). The slur used here disparages on account of sexual orientation and is highly offensive and demeaning to an individual who identifies as gay. *See Chuang v. Univ. of California Davis, Bd. of Trs.*, 225 F.3d 1115, 1128 (9th Cir. 2000) ("We need not dwell on the offensiveness of the term used. It is 'an egregious and bigoted insult, one that constitutes strong evidence of discriminatory animus.'" (citation omitted)).

The circumstances surrounding the use of the slur reinforce its severity. Oda referred to Crowe as the slur at a work presentation in front of several colleagues, and while introducing him to a new colleague in the presence of five or six other officers. *See Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 688 (9th Cir. 2017) (finding hostile work environment where perpetrator "belittled [the plaintiff] in front of" coworkers). Crowe testified that "since Officer Oda . . . outed me to the department, I suffered tremendously, mentally emotionally and physically." Finally,

Crowe alleges that his superiors knew about or witnessed the harassment and did not take reasonable remedial measures. *See Dawson*, 630 F.3d at 939 (An employer may be liable for an employee's harassment of a co-worker if it "knew or should have known of the harassment but did not take adequate steps to address it." (internal quotation marks and citation omitted)). This meets the "minimal" degree of proof, *Mayorkas*, 107 F.4th at 1059, necessary for Crowe to show that a reasonable jury could find the conduct so severe or pervasive as to constitute a hostile work environment.

**REVERSED AND REMANDED.**

FILED

MAY 12 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

R. NELSON, Circuit Judge, concurring in the judgment:

Because we must view the evidence and draw all reasonable inferences in the light most favorable to Crowe, I agree that Crowe has met his "low" evidentiary burden to show the "minimal" proof necessary to survive summary judgment. *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024); *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1033 (9th Cir. 2005). Therefore, I concur in the judgment. I write separately to clarify a few points.

First, nothing in the memorandum disposition should be read to conflict with our opinion in *Crowe v. Wormuth*, 74 F.4th 1011 (9th Cir. 2023). There, we held that the Army "clearly articulated sufficient, non-discriminatory reasons" for firing Crowe, including Crowe "regularly having sex with [a female medical assistant] in a room at the [Army hospital] during work hours," "gossiping" and "having inappropriate discussions . . . about his romantic relationships," and confronting a coworker about an alleged romantic relationship. *Id.* at 1036. I disagree with the memorandum disposition's characterization that the "Army *purported* to discipline Crowe due to *allegations* that he engaged" in misconduct. Mem. Disp. at 4 (emphasis added). Crowe's misconduct is undisputed. We are bound by *Wormuth*, and the memorandum disposition cannot be construed as insinuating otherwise or conflicting with *Wormuth*'s recitation of the facts on remand. Crowe's unlawful

termination claim is barred by law of the case from being presented to a jury in any form.

Second, although "there is no genuine dispute of material fact that Crowe was [ultimately] terminated because of his misconduct at the workplace, as opposed to his sexual orientation," *Wormuth*, 74 F.4th at 1037, I agree that the facts suggest the initial investigation and reassignment could have been motivated and tainted by "subordinate bias." *Poland v. Chertoff*, 494 F.3d 1174, 1181 (9th Cir. 2007); *see* Mem. Disp. at 4–7. The supervisor's decision to appoint Oda as the investigating officer was unwise to say the least. But the supervisor articulated plausible reasons for doing so—because Oda was "the first officer he saw" and "capable of doing investigations" as the "operations officer." *Wormuth*, 74 F.4th at 1019. And management launched the investigation shortly after receiving a specific complaint from a hospital employee. *Id.* That employee "alleged that Crowe had aggressively confronted [him] about a supposed relationship between" him and the female medical assistant with whom Crowe was previously having "sex three to four times per week during work hours in an upstairs room at [the hospital], during which time Crowe would take off his duty belt that held his service weapon." *Id.* Nevertheless, because of Oda's appointment and conduct as the investigating officer, I agree there are sufficient facts in the record for Crowe to survive a summary judgment motion

2

on the discrimination and retaliation claims as they relate to the investigation (not as to any termination claim).

On the hostile work environment claim, I agree that the district court should have considered the totality of the circumstances. *See* Mem. Disp. at 7–8. I add only that the totality of the circumstances means *all* relevant circumstances. The relevant circumstances here include the "hours of his shift" that Crowe himself spent using inappropriate sexualized language, *Wormuth*, 74 F.4th at 1019, the lack of "evidence that either [of Crowe's supervisors] knew at the relevant times that Crowe was bisexual," *id.* at 1036, and the unique cultural context (U.S. Army law enforcement) in which the offensive language was used, *cf. Parker v. Levy*, 417 U.S. 733, 743 (1974). They also include that "when Crowe early on complained about Oda's homophobic language, [their supervisor] took immediate action, counseling Oda that this was inappropriate and requiring Oda to apologize." *Wormuth*, 74 F.4th at 1036–37. These circumstances all strongly suggest that just because Crowe's claim can proceed past summary judgment, does not mean that it will succeed at trial. *Cf. Dupree v. Younger*, 598 U.S. 729, 731–32 (2023) ("[D]istrict courts evaluate Rule 50(a) motions in light of the trial record rather than the discovery record.").

These points are important as they necessarily limit the scope of any trial on remand. Crowe was properly terminated. So he cannot present evidence of or

3

recover for any lost wages. At most, Crowe may seek nominal damages for any procedural violation based on a potentially ill-advised assignment of the investigation to Oda. Crowe is within his right to pursue that claim. But given his undisputed bad actions, one wonders whether the juice is worth the squeeze.

Finally, I agree that "homophobic slurs" can be "offensive and demeaning," and may lend support to a discrimination claim under recent precedent. Mem. Disp. at 8; *see Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 669 (2020); *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1114, 1116–18 (9th Cir. 2023). But I caution that using "homophobic" language towards someone should not necessarily be considered "an egregious and bigoted insult" on the same level as calling him an odious racial epithet for purposes of evaluating Title VII claims. *See* Mem. Disp. at 8 (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1128 (9th Cir. 2000)).

With those important qualifications, I concur in the judgment.